UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHAPMAN ROBERTS,

                Plaintiff,

              -v.-

BROADWAYHD LLC, BROADWAY TELEVISION
NETWORK, INC., BROADWAY WORLDWIDE,
INC., BROADWAYONLINE.COM, INC., BRUCE
BRANDWEN PRODUCTIONS, INC., BRUCE
BRANDWEN, LEIBER STOLLER PRODUCTIONS,
INC., MICHAEL STOLLER, ESTATE OF JEROME
LEIBER, AMAZON DIGITAL SERVICES LLC, and
SONY/ATV MUSIC PUBLISHING, LLC,

                Defendants.

19 Civ. 9200 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

       Plaintiff Chapman Roberts brings this action under the Copyright Act,

Pub. L. No. 94-553, 90 Stat. 2541 (1976), for direct and contributory copyright

infringement; under the Digital Millennium Copyright Act, Public L. No. 105-

304, 112 Stat. 2860 (1998), for dissemination of false copyright management

information ("CMI"); and under the common law for unjust enrichment.  The

suit concerns the distribution by various means since 2000 of a filmed version

of the musical *Smokey Joe's Café* (the "Recording"), which includes Plaintiff's

copyrighted vocal arrangements (the "Vocal Arrangements").  Plaintiff alleges

that Bruce Brandwen as an individual; Bruce Brandwen Productions, Inc.,

Broadway Television Network, Inc. ("BTN"), Broadway Worldwide, Inc., and

BroadwayOnline.com, Inc. (collectively, the "Brandwen Corporate Defendants,"

and with Bruce Brandwen, the "Brandwen Defendants"); Leiber Stoller

Productions, Inc., Michael Stoller, and the Estate of Jerome Leiber (collectively, the "L&S Defendants"); Sony/ATV Music Publishing, Inc. ("SATV"); Amazon Digital Services LLC ("Amazon"); and BroadwayHD LLC ("BroadwayHD") (all collectively, "Defendants") each played a role in, and improperly profited from, the distribution of the Vocal Arrangements without Plaintiff's permission and thereby infringed his copyright.

In three separate motions, the majority of the Defendants move to dismiss Plaintiff's First Amended Complaint ("FAC") (Dkt. #41), the operative pleading. For the reasons set forth below, the Court denies Bruce Brandwen's motion, grants the L&S Defendants' motion, and grants SATV's motion. The Court reserves decision on Plaintiff's request for leave to file a Second Amended Complaint.

## BACKGROUND[1]

### A.    The Parties

Plaintiff Chapman Roberts is a musician, performer, and producer whose vocal arrangements have been used in many Broadway and West End productions. (FAC ¶¶ 2, 30). Plaintiff created the Vocal Arrangements for the

---

[1]    The facts in this Opinion are drawn primarily from Plaintiff's First Amended Complaint (the "FAC" (Dkt. #41)), which is the operative pleading in this case. For ease of reference, the Court refers to Bruce Brandwen's Supplemental Motion to Dismiss as "Brandwen Br." (Dkt. #90); SATV's Memorandum of Law in Support of Its Motion to Dismiss the First Amended Complaint as "SATV Br." (Dkt. #109); the L&S Defendants' Memorandum of Law in Support of Their Motion to Dismiss as "L&S Br." (Dkt. #111); Plaintiff's Memorandum of Law in Opposition to Brandwen's Supplemental Motion to Dismiss as "Pl. Brandwen Opp." (Dkt. #96); Plaintiff's Memorandum of Law in Opposition to the L&S Defendants' and SATV's Motions to Dismiss as "Pl. L&S and SATV Opp." (Dkt. #116); Brandwen's Reply Memorandum of Law as "Brandwen Reply" (Dkt. #102); SATV's Reply Memorandum of Law as "SATV Reply" (Dkt. #117); and the L&S Defendants' Reply Memorandum of Law as "L&S Reply" (Dkt. #119).

Broadway production of *Smokey Joe's Café* (the "Musical") in 1994 and registered the Vocal Arrangements with the U.S. Copyright Office, effective May 23, 1995.  (*Id.* at 8).  Plaintiff is the sole and exclusive owner of the copyright in the Vocal Arrangements.  (*Id.*).

Defendant BroadwayHD is a New York limited liability company engaged in media distribution, with its principal place of business in New York, New York.  (FAC ¶ 14).

Defendant Bruce Brandwen is a Broadway producer; the founder and president of BTN, a worldwide distributor of recorded Broadway performances; and the founder and owner of Broadway Worldwide, Brandwen Productions, and BroadwayOnline.com.  (FAC ¶ 4).  He is domiciled in the state of New York.  (*Id.* at ¶ 19).  BTN, Broadway Worldwide, and BroadwayOnline.com are Delaware corporations with a principal place of business in New York, New York.  (*Id.* at ¶¶ 15-17).  Bruce Brandwen Productions is a New York corporation with its principal place of business in New York, New York.  (*Id.* at ¶ 18).

Mike Stoller is an individual domiciled in California who regularly conducts business in New York, including business relevant to this action.  (FAC ¶ 22).  Jerome Leiber was a natural person domiciled in California who regularly conducted business in New York, including business relevant to this action.  (*Id.* at ¶ 23).  The Estate of Jerome Leiber was opened and domiciled in California and is the legal entity to be held liable for actions committed by

Jerome Leiber.  (*Id.*).[2]  Leiber and Stoller are and were songwriters who were the owners and operators of the entities Jerry Leiber Music, Mike Stoller Music, Mike and Jerry Music LLC, and Trio Music Company, Inc., all of which were predecessor entities to Defendant Leiber Stoller Productions.  (*Id.* at ¶ 5).  Defendant Leiber Stoller Productions is a California corporation engaged in the business of music publishing and distribution, and conducts significant business in New York, including business relevant to this action.  (*Id.* at ¶ 21).

Defendant SATV is a music publishing company owned by Sony Entertainment, Inc.  (FAC ¶ 7).  SATV is a Delaware limited liability company with its principal place of business in New York, New York.  (*Id.* at ¶ 24).

Defendant Amazon is a Delaware limited liability company with its principal place of business in Seattle, Washington, and which conducts a significant amount of business in New York, New York.  (FAC ¶ 20).

**B.    Factual Background**

In 1994, Plaintiff created the Vocal Arrangements for the Musical, which itself was based on original songs written by Defendants Jerome Leiber and Mike Stoller.  (FAC ¶ 31).  Plaintiff created the Vocal Arrangements pursuant to a Vocal Arranger Agreement, dated May 1, 1994, between Plaintiff and non-

---

[2]    For purposes of this Opinion, the Court adopts Plaintiff's description of the relevant parties.  However, the Court notes L&S Defendants' assertion that:

> Defendants "Estate of Jerome Leiber" and "Michael Stoller" — whose legal name is Mike Stoller — have been sued under non-existent or incorrect names.  By filing this motion to dismiss in the name of the "Estate of Jerome Leiber," the L&S Defendants are not waiving any argument related to the identity of that party or whether plaintiff has sued the incorrect entity.

(L&S Br. 1 n.2).

party L&S Broadway Company, which agreement was then amended in 1996.
(*Id.* at ¶ 32). The Vocal Arranger Agreement provides that, other than limited
license rights to perform the Vocal Arrangements in limited types of live
performances and to record a cast album, the Vocal Arrangements may not be
performed, transcribed, recreated, copied, published, or recorded without
permission from Plaintiff. (*Id.*). The Vocal Arranger Agreement also provides
that Plaintiff retains sole ownership in the copyright to his Vocal
Arrangements. (*Id.*). Plaintiff registered a copyright for the Vocal
Arrangements with the United States Copyright Office as the sole owner of the
copyright, under Reg. No. PAu 1-994-441, with an effective date of May 23,
1995. (*Id.* at ¶ 33; *id.* at Ex. A).

At some time in 1998 or 1999, L&S Broadway Company assigned its
limited license rights to use the Vocal Arrangements to one or more of Leiber
and Stoller individually, or to one or more of their other corporate entities, who
at some point then assigned those rights to Defendant Leiber Stoller
Productions. (FAC ¶ 34). Around the same time, L&S Broadway Company or
Leiber Stoller Productions (or its predecessors) granted Defendant BTN
permission to use Leiber and Stoller's musical compositions in a video
recording of the Musical. (*Id.* at ¶ 35).

In 1999, BTN recorded two performances of the Musical without
Plaintiff's permission. (FAC ¶ 36). BTN received a distribution license from
Leiber Stoller Productions (or its predecessors) for the Recording. (*Id.*). Later
in 1999, Plaintiff learned that the Recording had been made without his

permission and contacted BTN to object to its distribution.  (*Id.* at ¶ 37).  BTN asked for retroactive permission to commercially distribute the Recording to the public (*id.*), but BTN and Plaintiff failed to come to an agreement regarding use of Plaintiff's Vocal Arrangements (*id.* at ¶ 38).  BTN nevertheless moved forward with distributing the Recording.  (*Id.* at ¶ 39).  BTN did not obtain permission from Plaintiff to record his Vocal Arrangements, and BTN failed to provide Plaintiff with compensation for the Recording.  (*Id.*).  BTN televised the Recording on pay-per-view from approximately 2000 to 2001.  (*Id.* at ¶ 40). Plaintiff was aware of the initial pay-per-view distribution in 2000 or 2001, but did not sue BTN for copyright infringement at that time.  (*Id.*).  The Brandwen Corporate Defendants continued to distribute the Recording from 2000 to 2013, without permission from, or notice or compensation to, Plaintiff.  (*Id.* at ¶ 41).

The initial license from Leiber Stoller Productions (or its predecessors) to exploit and distribute the Recording expired in 2014.  (FAC ¶ 44).  In 2007, Leiber Stoller Productions (or its predecessors) either sold its publishing rights catalog to SATV or granted SATV the rights to administer the catalog, retaining a royalty right.  (*Id.* at ¶ 46).  In 2018, without notice to Plaintiff, Broadway Worldwide entered into a new licensing agreement with SATV for further distribution rights for the Recording, and subsequently purported to grant those rights to BroadwayHD for digital streaming.  (*Id.* at ¶¶ 47-48).  Beginning in September 2019, BroadwayHD used the Recording to promote its service and streamed the Recording on the internet, including over its own platform

6

and through Defendant Amazon's services, without authorization from, or attribution or compensation to, Plaintiff.  (*Id.* at ¶¶ 49, 52-53, 57).

## C.     Procedural History

Plaintiff filed the original complaint against the Brandwen Defendants and BroadwayHD on October 4, 2019, seeking relief for direct and contributory copyright infringement and dissemination of false CMI.  (*See* Dkt. #1).  The case was originally assigned to the Honorable Analisa Torres, who entered a Civil Case Management Plan and Scheduling Order on December 3, 2019 (Dkt. #18), and referred the matter to Magistrate Judge Robert W. Lehrburger for settlement negotiations (Dkt. #19).  The Brandwen Defendants and BroadwayHD answered the original complaint on December 9, 2019.  (Dkt. #21).  On January 3, 2020, Judge Torres amended the referral to Magistrate Judge Lehrburger to encompass general pretrial matters.  (Dkt. #27).  Plaintiff filed a motion to amend the complaint on January 9, 2020 (Dkt. #33), which motion Magistrate Judge Lehrburger granted on January 23, 2020 (Dkt. #40). Plaintiff filed the FAC on January 23, 2020, joining as defendants the L&S Defendants, SATV, and Amazon, and adding an unjust enrichment claim against the Brandwen Defendants, the L&S Defendants, and SATV.  (Dkt. #41).

The case was reassigned to this Court on January 24, 2020. BroadwayHD filed an answer on February 20, 2020 (Dkt. #61); Amazon filed an answer on March 12, 2020 (Dkt. #70); SATV filed a pre-motion letter on March 13, 2020 (Dkt. #75); the Brandwen Corporate Defendants jointly filed an answer on April 1, 2020 (Dkt. #78); and Bruce Brandwen filed a motion to

7

dismiss the FAC the same day (Dkt. #79).  Bruce Brandwen and the L&S Defendants each filed a pre-motion letter on April 20, 2020.  (Dkt. #86, 87). The Court held a conference with parties on April 29, 2020, during which it set the briefing schedule for the anticipated motions to dismiss.  (Minute Entry for April 29, 2020).

Bruce Brandwen filed his Supplemental Motion to Dismiss and accompanying declaration on June 3, 2020 (Dkt. #90, 91); Plaintiff filed his opposition memorandum and declaration on July 6, 2020 (Dkt. #96, 97); and Brandwen filed his reply on July 16, 2020 (Dkt. #102).  The Court twice granted the L&S Defendants and SATV extensions on their time to file their motions to dismiss.  (Dkt. #101, 106).  In accordance with the revised briefing schedule, they filed their respective motions and accompanying materials on August 21, 2020.  (Dkt. #107-09 (SATV); Dkt. #110-12 (L&S Defendants)). Plaintiff filed a consolidated brief in opposition to both the L&S Defendants' and SATV's motions, as well as an accompanying declaration, on September 18, 2020.  (Dkt. #115, 116).  SATV and the L&S Defendants filed their replies on October 2, 2020.  (Dkt. #117 (SATV); Dkt. #119 (L&S Defendants)).  Briefing on the three motions to dismiss is now complete.

## DISCUSSION

### A.    Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Each of the moving Defendants seeks dismissal of Plaintiff's claims against them under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  (*See* Brandwen Br. 1; SATV Br. 1;

L&S Br. 8).  To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  The Court must accept as true all well-pleaded factual allegations in the complaint.  *Id.*  A complaint that contains only "naked assertions" or "a formulaic recitation of the elements of a cause of action" does not suffice.  *Twombly*, 550 U.S. at 555.

## B.      The Court Denies Bruce Brandwen's Motion to Dismiss

Plaintiff brings claims against Defendant Bruce Brandwen for direct copyright infringement (FAC ¶¶ 59-72), contributory copyright infringement (*id.* at ¶¶ 73-89), and dissemination of false CMI (*id.* at ¶¶ 90-103).  In the alternative to his direct and contributory copyright infringement claims, Plaintiff pleads a claim for unjust enrichment.  (*Id.* at ¶¶ 104-19).

Brandwen filed two motions to dismiss the FAC, the first on March 13, 2020 (Dkt. #79), and the second on June 3, 2020 (Dkt. #90-91).  The Court considers the latter motion, Brandwen's Supplemental Motion to Dismiss, and the accompanying declaration as the operative motion papers.  In that motion, Brandwen argues that there is no basis for piercing the corporate veil of the Brandwen Corporate Defendants — BTN, Broadway Worldwide, Inc., BroadwayOnline.com, Inc., and Bruce Brandwen Productions, Inc. — so as to subject Brandwen to individual liability for copyright infringement and unjust

enrichment.  (*See* Brandwen Br. 1).  For the reasons set forth below, the Court denies Brandwen's motion.

### 1.     Traditional Corporate Veil Principles Do Not Shield Individual Officers in the Copyright Infringement Context

Defendant Brandwen argues that he should be shielded from individual liability for alleged acts of copyright infringement and unjust enrichment. (Brandwen Br. 6-9).  He asserts that while "the facts as set forth by the Plaintiff, at best at this stage of the litigation, might (barely) set forth a cause against BTN and possibly its successor, Broadway Worldwide, Inc.," they fail to implicate Brandwen personally.  (*Id.* at 7).  Plaintiff responds that the "FAC sufficiently pleads claims against Mr. Brandwen individually for direct and vicarious/contributory copyright infringement pursuant to 17 U.S.C. § 101, *et seq.*, for distribution of false Copyright Management Information ('CMI') pursuant to 17 U.S.C. §1202(a)(1) and (a)(2), and, in the alternative, for unjust enrichment under New York law" (Pl. Brandwen Opp. 10), because it "makes several allegations against Mr. Brandwen in his individual capacity, including his knowledge of the infringing activities, his control of the actions of the Brandwen Corporate Defendants, and the financial benefits he received from the infringing activities" (*id.*).  Brandwen's motion, Plaintiff contends, misguidedly relies on principles of corporate veil piercing that do not apply in the copyright infringement context, where corporate officers can be held liable for copyright infringement if they personally participated in the alleged infringing acts.  (*Id.* at 15-17).  In his reply, Brandwen does not engage with Plaintiff's arguments, but instead insists in conclusory fashion that he is

correct on the law and that "no reply to Plaintiff's attempt to circumvent recognized corporate law decisions on this issue is required[.]"  (Brandwen Reply 7).

As a matter of law, Plaintiff is correct regarding individual liability for copyright infringement claims.  It is well-established that "[a] corporate officer can be held liable under a theory of vicarious infringement where he profits from direct infringement while declining to exercise a right to stop or limit it." *Live Face on Web, LLC* v. *Five Boro Mold Specialist Inc.*, No. 15 Civ. 4779 (LTS), 2016 WL 1717218, at *3 (S.D.N.Y. Apr. 28, 2016) (internal quotation marks omitted); *see also Warren* v. *John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 618-19 (S.D.N.Y. 2013) ("A corporate employee can be held personally liable for copyright infringement under a theory of contributory liability if the officer is a moving, active, conscious force behind the defendant corporation's infringement." (internal alterations and quotation marks omitted)); *Lechner* v. *Marco-Domo Internationales Interieur GmbH*, No. 03 Civ. 5664 (JGK), 2005 WL 612814, at *6 (S.D.N.Y. Mar. 14, 2005) ("Rackwitz argues that, under both German and New York law, he cannot be held liable because the plaintiff has not made a sufficient showing to pierce the corporate veil of Marco-Domo.  This argument is without merit because the plaintiff alleges that Rackwitz participated in the alleged infringement of the plaintiff's work in his personal capacity.").  The caselaw Brandwen cites does not concern copyright infringement and is thus inapposite.  (*See* Brandwen Br. 6-8 (citing *EED Holdings* v. *Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508 (S.D.N.Y. 2005)

11

(declining to pierce corporate veil in action for breach of contract and fraud); *JSC Foreign Econ. Ass'n Technostroyexport* v. *Int'l Dev. & Trade Servs.*, 295 F. Supp. 2d 366 (S.D.N.Y. 2003) (judgment creditor seeking to collect judgments relating to foreign arbitration awards); *NetJets Aviation, Inc.* v. *LHC Commc'ns, LLC*, 537 F.3d 168 (2d Cir. 2008) (applying Delaware law and finding that the complaint sufficiently pleaded claims against an individual LLC owner for breach of contract and accounts stated); *Elf Atochem N. Am., Inc.* v. *Jaffari*, 727 A.2d 286 (Del. 1999) (Delaware derivative suit involving claim of breach of fiduciary duty); and *Martin Hilti Family Tr.* v. *Knoedler Gallery, LLC*, 386 F. Supp. 3d 319 (S.D.N.Y. 2019) (analyzing alter ego liability on claims of fraud and fraudulent concealment)).

## 2. Plaintiff Adequately Pleads Facts Implicating Bruce Brandwen Individually

Given the legal framework discussed above, the question here is whether Plaintiff has adequately pleaded that Brandwen personally "profit[ed] from direct infringement while declining to exercise a right to stop or limit it," *Live Face on Web*, 2016 WL 1717218, at *3, and/or was the "moving, active, conscious force behind the [Brandwen Corporate Defendants'] infringement," *Warren*, 952 F. Supp. 2d at 619.  The Court finds that he has.

As relevant, Plaintiff alleges in the FAC that:

> i.   Brandwen is "the founder and president of BTN," as well as "the founder and sole owner of Broadway Worldwide,      Brandwen      Productions,      and

BroadwayOnline.com, [and] controls each of the companies" (FAC ¶ 4);

ii.  "BTN and its successors in interest, including Broadway Worldwide and the Brandwen-owned defendants, continued to distribute the Recording from 2000-2013, without permission from, or notice or compensation to, Roberts" (*id.* at ¶ 41);

iii.  Brandwen "[was] fully aware of Roberts' status as copyright owner of the Vocal Arrangements" (*id.* at ¶ 54);

iv.  "Brandwen … published copies of the Recording, including the Vocal Arrangements, without the required copyright notice indicating Roberts as the owner of the copyright in the Vocal Arrangements, despite full knowledge and awareness of his status as the copyright owner" (*id.* at ¶ 58);

v.  Brandwen "infringed Roberts' copyright in the Vocal Arrangements by reproduction, public performance, and distribution of the same, without Roberts' permission or authorization" (*id.* at ¶ 61);

vi.  the Brandwen Corporate Defendants, Amazon, and BroadwayHD, "by and through the actions of Bruce Brandwen, copied, publicly performed, and distributed the Vocal Arrangements without authorization from Roberts" (*id.* at ¶ 74);

vii.  "Brandwen's improper license of the Vocal Arrangements to third-party entities induced, caused, enabled, facilitated, and/or materially contributed to the infringing activity of those entities" (*id.* at ¶ 77); and

viii.  "[a]s a direct and proximate result of the copyright infringement detailed herein, Defendants have gained and/or will gain direct financial benefit and substantial profits in an amount presently unknown and to be determined at trial" (*id.* at ¶ 83).

These allegations, accepted as true at this stage of the litigation, expressly

concern the means by which Brandwen personally participated in the copyright

13

infringement, not just the conduct of the Brandwen Corporate Defendants. Thus, there is sufficient factual matter stated in the FAC for the Court to draw the "reasonable inference that [Brandwen] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Accordingly, the Court denies Defendant Bruce Brandwen's motion to dismiss the claims against him for copyright infringement.

## C.    The Court Grants the L&S Defendants' Motion to Dismiss

Plaintiff brings claims against the L&S Defendants for contributory copyright infringement (FAC ¶¶ 73-89), unjust enrichment (*id.* at ¶¶ 104-19), and dissemination of false CMI (*id.* at ¶¶ 90-103). The L&S Defendants argue four grounds for dismissal of these claims: (i) Plaintiff's contributory copyright infringement claim is barred by the Copyright Act's three-year statute of limitations and (ii) is also subject to dismissal based on the plain language of the agreements at issue; (iii) Plaintiff's false CMI claim fails as a matter of law because he does not allege that the L&S Defendants provided or distributed false CMI; and (iv) Plaintiff's alternative claim for unjust enrichment is inadequately pleaded, preempted by the Copyright Act, and duplicative of his copyright infringement claim. (*See* L&S Br. 2). For the reasons set forth below, the Court dismisses Plaintiff's claims.

### 1.    Plaintiff's Contributory Copyright Infringement Claim Against the L&S Defendants

#### a.    Legal Standard and Factual Allegations

"The owner of a copyright has the exclusive right to — or to license others to — reproduce, perform publicly, display publicly, prepare derivative

works of, and distribute copies of, his copyrighted work." *Arista Records, LLC*
v. *Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (citing 17 U.S.C. § 106).  To state a
claim for copyright infringement, "a plaintiff must allege both [i] ownership of a
valid copyright and [ii] infringement of the copyright by the defendant." *Spinelli*
v. *Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (internal quotation
marks omitted).  "[C]ontributory infringement is based upon 'the common-law
doctrine that one who knowingly participates or furthers a tortious act is jointly
and severally liable with the prime tortfeasor.'" *New London Assocs., LLC* v.
*Kinetic Social LLC*, 384 F. Supp. 3d 392, 407 (S.D.N.Y. 2019) (quoting *Arista
Records*, 604 F.3d at 117).  Thus, a person commits contributory copyright
infringement by "intentionally inducing or encouraging direct infringement[.]"
*Spinelli*, 903 F.3d at 197.  "Without a showing of a direct copyright
infringement, secondary liability cannot be maintained." *Id.*  "The resolution of
the issue depends upon a determination of the function that the alleged
infringer plays in the total reproduction process." *Arista Records*, 604 F.3d at
118 (internal alterations and quotation marks omitted).

As alleged, in 1999, L&S Broadway Company or Leiber Stoller
Productions (or its predecessors) granted Defendant BTN a license to create
and distribute the Recording without notice to or permission from Plaintiff.
(FAC ¶¶ 35-36).  In 2007, Leiber Stoller Productions (or its predecessors) either
sold its publishing rights catalog to SATV or granted SATV the rights to
administer the catalog.  (*Id.* at ¶ 46).  Based on these facts, Plaintiff claims that
the L&S Defendants "had actual or constructive knowledge of the infringing

acts of Brandwen, BroadwayHD, BTN, Broadway Worldwide and Amazon" (*id.* at ¶ 75); "knew that [the Brandwen Defendants'] distribution would result in further downstream infringement by Defendants BroadwayHD and/or Amazon" (*id.* at ¶ 79); "induced, caused, enabled, facilitated, and/or materially contributed to the infringing activity of Defendants Brandwen, BroadwayHD, BTN, Broadway Worldwide, and Amazon by either directly distributing the Vocal Arrangements to Defendants BroadwayHD and Amazon, or by causing the further downstream distribution thereof, without ever obtaining Plaintiff Roberts' authorization to do so" (*id.* at ¶ 80); and "gained and/or will gain direct financial benefit and substantial profits" from the infringement of Plaintiff's copyright (*id.* at ¶ 83).

### b. Plaintiff's Claim Is Barred by the Statute of Limitations

The L&S Defendants first argue that Plaintiff's contributory copyright infringement claim is barred by the Copyright Act's three-year statute of limitations.  The Copyright Act provides that "[n]o civil action shall be maintained under the [Act] unless it is commenced within three years after the claim accrued."  17 U.S.C. § 507(b).  Significantly, however, the principles governing the analysis of a statute of limitations defense in the copyright context differ depending upon whether the plaintiff asserts a claim focusing on disputed copyright ownership or merely infringing conduct.  The L&S Defendants argue that Plaintiff pleads an "ownership claim" that accrued in 1999 or 2000 and thus is untimely, barring *both* the ownership claim and derivative infringement claims.  (L&S Br. 10-13).  They also argue that even if

16

Plaintiff's claim were construed as focusing on infringing conduct rather than disputed ownership, it remains barred as no relevant conduct by the L&S Defendants occurred within the limitations period.  (*Id.* at 13-15).  Plaintiff responds that his claim is not an ownership claim and that L&S committed infringing conduct in 2018 and/or 2019, well within the statute of limitations period.  (Pl. L&S and SATV Opp. 18-25).  As set forth herein, the L&S Defendants have the better of the argument.

### i.    **Plaintiff Has Pleaded an Ownership Claim**

A copyright infringement claim is an "ownership claim" when it "does not involve the nature, extent or scope of copying," but instead focuses on competing assertions of ownership or rights in the work at issue.  *Kwan* v. *Schlein*, 634 F.3d 224, 229 (2d Cir. 2011).  An "ownership claim accrues only once, when 'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'"  *Id.* at 228 (quoting *Stone* v. *Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992)); *see also Merchant* v. *Levy*, 92 F.3d 51, 56 (2d Cir. 1996) (concluding that claim accrues when a plaintiff "knows or has reason to know of the injury upon which the claim is premised").  Accrual of such a claim can be triggered by another party's "express assertion of sole authorship or ownership," *Kwan*, 634 F.3d at 228; by "implicit repudiation by conspicuously exploiting the copyright without paying royalties," *Wilson* v. *Dynatone Publ'g Co.*, 892 F.3d 112, 118 (2d Cir. 2018) (internal quotation marks omitted); or "when alleged co-owners learn they are entitled to royalties that they are not

17

receiving," *Gary Friedrich Enters., LLC* v. *Marvel Characters, Inc.*, 716 F.3d 302, 317 (2d Cir. 2013).

Plaintiff's allegations against the L&S Defendants point towards an ownership claim, of which Plaintiff became aware in 1999. Plaintiff alleges that, in 1998 or 1999, the L&S Defendants reassigned the rights to use the Vocal Arrangements amongst themselves and then granted BTN permission to record the Musical and commercially distribute the Recording without permission from Plaintiff. (FAC ¶¶ 35-36). Plaintiff learned that the Recording had been made without his permission later in 1999, and BTN began pay-per-view distribution of the recording in 2000. (*Id.* at ¶¶ 37, 40). Subsequently, in 2007, L&S sold their publishing rights catalog, including rights to exploit the Musical, to SATV. (*Id.* at ¶ 46). Plaintiff refers to the L&S Defendants' conduct as the "licensing or sale of the Vocal Arrangements" without notice or compensation to Plaintiff (*id.* at ¶ 114), and alleges that, post-2007, Defendant SATV "now apparently purports to own the same rights that Defendants Leiber, Stoller, and Leiber Stoller Productions purported to possess" with respect to Plaintiff's Vocal Arrangements (*id.*). These allegations suggest an assertion of ownership by the L&S Defendants. *See, e.g.*, *Charles* v. *Seinfeld*, 410 F. Supp. 3d 656, 658-60 (S.D.N.Y. 2019) (concluding that "ownership forms the backbone of the infringement claim" where plaintiff asserted co-authorship of television project produced and distributed without plaintiff's involvement (internal quotation marks omitted)); *Ortiz* v. *Guitian Bros. Music Inc.*, No. 07 Civ. 3897 (RWS), 2008 WL 4449314, at *4 (S.D.N.Y. Sept. 29, 2008)

18

(concluding that plaintiff stated an ownership claim where, *inter alia*, "Defendants' open distribution and exploitation of the Motion Picture and Score without paying any royalties to Ortiz should have put Ortiz on notice that Defendants rejected his claim to copyright in the Score").[3]

Based on Plaintiff's non-conclusory allegations in support of his contributory copyright infringement claim, the Court agrees with the L&S Defendants that Plaintiff has pleaded an ownership claim that accrued in 1999, when the L&S Defendants allegedly granted BTN an all-encompassing license to record and distribute the Musical.[4]  This claim is therefore untimely and must be dismissed.  *See, e.g.*, *Minder Music Ltd.* v. *Mellow Smoke Music Co.*, No. 98 Civ. 4496 (AGS), 1999 WL 820575, at *2 (S.D.N.Y. Oct. 14, 1999) ("Although plaintiff attempts to portray its claim as one for an ongoing

---

[3]    To be clear, the question here is not whether any of the L&S Defendants did, in fact, assert an ownership interest in the Vocal Arrangements in the manner alleged by Plaintiff.  Indeed, the L&S Defendants deny that they made any such assertion and seek dismissal on that basis (*see* L&S Br. 5-6), and Plaintiff concedes this point in his memorandum in opposition (*see* Pl. L&S and SATV Opp. 19 ("[N]o defendant here has claimed ownership of Mr. Roberts' [] Vocal Arrangements.")).  Rather, the question is whether Plaintiff *pleaded* that the L&S Defendants acted in a manner consistent with claiming an ownership interest.

[4]    The lone allegation pointing against a contested ownership claim is Plaintiff's assertion in support of his unjust enrichment claim that "Defendants Leiber, Stoller and Leiber Stoller Productions misrepresented to third parties that they were either affiliated with or had authorization from Roberts to license or sell the Vocal Arrangements."  (FAC ¶ 113).  This is not alleged in connection with Plaintiff's copyright infringement claim and it is not supported by any well-pleaded allegations in the FAC — that is, Plaintiff does not allege elsewhere that the L&S Defendants told BTN, SATV, or any other entity that Plaintiff was the owner of the rights in the Vocal Arrangements and that they had obtained prior authorization from Plaintiff to license his Vocal Arrangements in addition to their musical compositions.  Thus, Plaintiff's copyright infringement claim cannot be sustained on that basis.  *See Kwan* v. *Schlein*, 246 F.R.D. 447, 451 (S.D.N.Y. 2007) ("[L]itigants have substantial leeway under Rule 8(e) to plead alternative, and even inconsistent, claims.  However, each alternative theory must itself be sufficient to state a claim[.]" (internal citation omitted)).

19

infringement, it has been established that the statute of limitations cannot be defeated by portraying an action as one for infringement when copyright ownership rights are the true matter at issue."); *Big East Entm't, Inc.* v. *Zomba Enters.*, 453 F. Supp. 2d 788, 796 (S.D.N.Y. 2006) (finding plaintiff's infringement claim time-barred because it was based "entirely upon its alleged ownership of [musical] compositions," which plaintiff had failed to litigate for more than a decade), *aff'd on other grounds*, 259 F. App'x 413 (2d Cir. 2008) (summary order).

### ii.   Plaintiff Has Not Pleaded Viable Infringement Claims Against the L&S Defendants

Plaintiff protests that he asserts infringement claims against the L&S Defendants that accrued in 2018 and 2019 and therefore are timely.  (Pl. L&S and SATV Opp. 16-17, 20-22).  However, the specific conduct Plaintiff describes in his opposition memorandum — that the L&S Defendants allegedly "directed Mr. Brandwen and Broadway Worldwide to Sony/ATV in order to acquire the rights to distribute and exploit the Recording" (*id.* at 16-17); "represented to Mr. Brandwen that Sony/ATV was the rights holder, causing the downstream infringement by the Brandwen Defendants and co-defendants Sony/ATV, BroadwayHD, and Amazon" (*id.* at 17); and "consented to the 2018/2019 Sony/ATV-Brandwen license" (*id.*) — is not pleaded in his FAC. Instead, the FAC alleges only that "in 2018, without notice to Roberts, Broadway Worldwide entered into a new license purportedly receiving further and new distribution rights for the Recording from Sony/ATV" (FAC ¶ 47), and

then "purported to grant those rights to BroadwayHD for digital streaming without prior notice to or permission from Roberts" (*id.* at ¶ 48).  This potentially states an infringement claim, but not against the L&S Defendants. Even then, Plaintiff is not entitled to rely on new facts raised in his opposition papers to save a deficient complaint from dismissal.  *See K.D. ex rel. Duncan* v. *White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) ("Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss."); *Uddoh* v. *United Healthcare*, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017) ("A plaintiff, however, is not permitted to interpose new factual allegations or a new legal theory in opposing a motion to dismiss, let alone new allegations that contradict the allegations in their pleading.").

Even if Plaintiff had adequately alleged an infringement claim against the L&S Defendants, such claim must be dismissed for an additional reason. When a plaintiff's underlying ownership claim is time-barred, all infringement claims related to that claim of copyright ownership are also time-barred, even if based on allegedly infringing actions occurring within the three-year limitations period.  *See Kwan*, 634 F.3d at 229-30 (because plaintiff's claim to co-authorship of a book was time-barred, "any attendant infringement claims must fail" as well); *see also Simmons* v. *Stanberry*, 810 F.3d 114, 116 (2d Cir. 2016) (per curiam) ("Where the plaintiff's claims were rooted in her contested assertion of an ownership interest in the copyright, and that claim of ownership interest was time-barred because of the plaintiff's delay in suing, the

plaintiff could not resuscitate the untimely claim by relying on claims against the defendants' continuing course of infringing publication after the plaintiff's ownership claim became time-barred.").  Plaintiff's infringement claim against the L&S Defendants, as set forth in his opposition brief, derives from the prior ownership claim — the ownership claim is that the L&S Defendants improperly asserted ownership over Plaintiff's Vocal Recordings in 1999, and the infringement claim is that they exercised such ownership interest in 2007 in the sale to SATV and in 2018 by consenting to further licensing of the Vocal Arrangements to the Brandwen Defendants.  As a result, even if Plaintiff's infringement claim against the L&S Defendants were adequately pleaded and timely standing alone, it would be barred by the statute of limitations as a result of the untimeliness of his underlying ownership claim.[5]

### 2. Plaintiff's Unjust Enrichment Claim Against the L&S Defendants Is Preempted by the Copyright Act

In the alternative to his contributory copyright infringement claim against the L&S Defendants, Plaintiff brings a state-law claim for unjust enrichment.  (FAC ¶¶ 104-19).  A claim for unjust enrichment under New York law requires a plaintiff to allege that "[i] defendant was enriched; [ii] at plaintiff's expense; and [iii] equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  *Diesel*

---

[5]     Because the Court dismisses Plaintiff's copyright infringement claim on statute of limitations grounds, the Court does not consider here the L&S Defendants' second argument that Plaintiff's claim is also subject to dismissal based on the plain language of agreements between the L&S Defendants, BTN, and SATV.  As a result, the Court need not decide whether it may appropriately consider materials introduced as exhibits in briefing on the motion to dismiss but not attached to the FAC.

*Props S.r.l.* v. *Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011)

(internal quotation marks omitted).

Plaintiff's allegations in support of his unjust enrichment claim are

substantively identical to his copyright infringement allegations except that

Plaintiff adds the allegation that the L&S Defendants "misrepresented to third

parties that they were either affiliated with or had authorization from Roberts

to license or sell the Vocal Arrangements." (FAC ¶ 113). The L&S Defendants

argue that Plaintiff fails to plead an unjust enrichment claim and that in any

case his claim is preempted by the Copyright Act and improper under New

York law because it is duplicative of his copyright infringement claim. (L&S

Br. 22-24). Even assuming Plaintiff adequately pleaded facts supporting an

unjust enrichment claim against the L&S Defendants, the Court agrees with

the L&S Defendants that such a claim is preempted by the Copyright Act.

"Section 301 of the Copyright Act preempts state law actions that seek to

vindicate rights equivalent to those protected under the Copyright Act."

*Transcience Corp.* v. *Big Time Toys, LLC*, 50 F. Supp. 3d 441, 453 (S.D.N.Y.

2014) (citing 17 U.S.C. § 301(a); *Berry* v. *Deutsche Bank Tr. Co. Ams.*, No. 07

Civ. 7634 (WHP), 2008 WL 4694968, at *6 (S.D.N.Y. Oct. 21, 2008), *aff'd*, 378

F. App'x 110 (2d Cir. 2010) (summary order)). "The Copyright Act preempts

claims when: [i] the particular work to which the claim is being applied falls

within the type of works protected by the Copyright Act, and [ii] the claim seeks

to vindicate legal or equitable rights that are equivalent to one of the bundle of

exclusive rights already protected by copyright law." *Id.* (citing *Berry*, 2008 WL 4694968, at *6).

"In order for a state cause of action to survive preemption, it must have an extra element beyond reproduction, preparation of derivative works, distribution, performance or display, which changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Transcience Corp.*, 50 F. Supp. 3d at 453 (emphasis omitted) (internal quotation marks omitted) (quoting *Gusler* v. *Fischer*, 580 F. Supp. 2d 309, 316 (S.D.N.Y. 2008)). To determine whether a plaintiff's unjust enrichment claim meets this standard, courts must consider "what plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." *Computer Assocs. Int'l Inc.* v. *Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992). Courts in the Second Circuit "take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim." *Briarpatch Ltd.* v. *Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004); *see also Nat'l Basketball Ass'n* v. *Motorola, Inc.*, 105 F.3d 841, 851 (S.D.N.Y. 1997) ("[T]he 'extra element' test should not be applied so as to allow state claims to survive preemption easily.").

Here, Plaintiff's unjust enrichment claim seeks to vindicate his right to control the copying, distribution, and public performance of his Vocal Arrangements. And the alleged "unjust enrichment" consists of royalties and other amounts allegedly received by the L&S Defendants in connection with the

exploitation of the Recording containing Plaintiff's Vocal Arrangements.  These elements do not meaningfully distinguish the claim from Plaintiff's copyright infringement claim.  *See Gusler*, 580 F. Supp. 2d at 316 (finding preemption where "the alleged acts giving rise to the unjust enrichment claim here are identical to those underlying the federal copyright claim, [and] through the unjust enrichment claim, [plaintiff] is seeking to protect the same rights in the drawings as those protected by the Copyright Act"); *Atrium Grp. de Ediciones y Publicaciones, S.L.* v. *Harry N. Abrams, Inc.*, 565 F. Supp. 2d 505, 509 (S.D.N.Y. 2008) ("The allegation that Plaintiffs failed to receive any advance payment, royalties, or remuneration of any kind whatsoever from Defendants does not transform their copyright infringement claim into an unjust enrichment claim. If the law were otherwise, every time [a] copyright infringer obtained any profit from his infringing activity, the copyright owner would be able to assert a state claim for unjust enrichment." (internal citation and quotation marks omitted)); *see also* 1 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 1.01(B)(1)(g) (2008) ("[A] state law cause of action for unjust enrichment or quasi contract should be regarded as an 'equivalent right' and hence, pre-empted insofar as it applies to copyright subject matter.").

Plaintiff asserts that the "extra element" in his unjust enrichment claim is the alleged misrepresentation by the L&S Defendants that they possessed the rights to exploit the Vocal Arrangements.  (Pl. L&S and SATV Opp. 30).[6]

---

[6]     That Plaintiff characterizes this as an element that distinguishes his unjust enrichment claim from his copyright infringement claim further supports disregarding this

"Such explicit misrepresentation is not necessary for Mr. Roberts to be successful in his claims of direct and contributory copyright infringement, but is a crucial factor in determining whether the defendants were unjustly enriched at Mr. Roberts' expense." (*Id.*).  However, even if proving misrepresentation were not necessary for his copyright infringement claim, this element does not "go[] far enough to make the unjust enrichment claim qualitatively different from a copyright infringement claim." *Briarpatch*, 373 F.3d at 306.  Misrepresentation, like the elements of awareness, intent, and enrichment, "limits the scope of the claim but leaves its fundamental nature unaltered." *Id.*[7]  *See also Atrium Grp.*, 565 F. Supp. 2d at 510 ("[D]eception is not the sort of element that would cause claims for unjust enrichment or misappropriation to be qualitatively different from the Federal Copyright Act." (internal quotation marks omitted)).[8]

Thus, Plaintiff's unjust enrichment claim against the L&S Defendants is preempted by the Copyright Act and must be dismissed.

---

allegation when determining whether Plaintiff pleaded an ownership claim with respect to copyright infringement.

[7]    The Court notes that Plaintiff's misrepresentation element is closely related to the "awareness" and "intent" elements to which the Second Circuit alluded in *Briarpatch Ltd.* v. *Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004), and to the extent that it is somehow distinct the Court concludes that it is nevertheless of the same type.

[8]    Furthermore, contrary to Plaintiff's contention, explicit misrepresentation is not a crucial factor in his unjust enrichment claim.  It makes no difference in the unjust enrichment analysis whether the L&S Defendants expressly stated to BTN or SATV or any other entity either that they owned the rights to the Vocal Arrangements, or that they did not own the rights but had permission from Plaintiff to exploit the Vocal Arrangements, or instead merely acted as if they owned the rights and thereby disavowed Plaintiff's rights *sub silentio*.  The purported financial benefit to the L&S Defendants and harm to Plaintiff are identical in either case.

### 3. Plaintiff Fails to State a Viable Claim for False Copyright Management Information

Plaintiff's third claim for relief against the L&S Defendants is for

provision and distribution of false CMI, in violation of 17 U.S.C. § 1202(a)(1) &

(2). (FAC ¶¶ 90-103). Plaintiff brings this claim against all Defendants and

does not differentiate among them in his allegations. He broadly asserts that

> Defendants recorded, distributed, publicly performed,
> and widely disseminated the Vocal Arrangements,
> including as part of the Recording, in connection with
> knowingly false Copyright Management Information, as
> such term is defined under 17 U.S.C. § 1202(c), without
> any attribution to Roberts as the copyright owner, and
> without authorization from Roberts of the law.

(FAC ¶ 93). Additionally, "Defendants provided and/or distributed Copyright

Management Information in connection with the Recording itself, without a

license from Roberts, and therefore all such Copyright Management

Information is knowingly false[.]" (*Id.* at ¶ 95). The L&S Defendants argue that

Plaintiff fails to identify any relevant conduct by the L&S Defendants

specifically or to describe any false CMI that they distributed, and that, in any

case, Plaintiff's claim that the Recording did not properly attribute the Vocal

Arrangements to him does not support a claim under § 1202(a). (L&S Br. 20-

22).

Section 1202(a) provides that "No person shall knowingly and with the

intent to induce, enable, facilitate, or conceal infringement — [i] provide

copyright management information that is false, or [ii] distribute or import for

distribution copyright management information that is false." 17 U.S.C.

§ 1202(a). CMI includes:

any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form … :

[i] The title and other information identifying the work, including the information set forth on a notice of copyright.

[ii] The name of, and other identifying information about, the author of a work.

[iii] The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.

[iv] With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work.

[v] With the exception of public performances of works by radio and television broadcast stations, in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work.

[vi] Terms and conditions for use of the work.

[vii] Identifying numbers or symbols referring to such information or links to such information.

[viii] Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.

*Id.* § 1202(c).

The Court agrees with the L&S Defendants that the facts alleged in the FAC do not support a viable claim against them for provision or distribution of false CMI.  To reiterate, Plaintiff's allegations against the L&S Defendants are that they gave BTN permission to record two performances of the Musical in

1999, licensed the Recording to BTN for distribution, and sold their catalog publishing rights to SATV in 2007.  (FAC ¶¶ 35-36, 46).  These allegations do not establish that the L&S Defendants themselves played any role in the packaging, promotion, or distribution of the Recording, or contributed CMI for such distribution.  Rather, as alleged, the L&S Defendants' sole involvement was authorizing BTN, and later SATV, to exploit their intellectual property as contained in the Recording.  Consequently, the only moments at which the L&S Defendants may have engaged in conduct satisfying the terms of § 1202(a) are when the Musical was staged for recording in 1999 and when the SATV transaction occurred in 2007.

In both cases, Plaintiff fails to allege in anything other than conclusory terms that the L&S Defendants disseminated any CMI, let alone false CMI, in connection with either the live production of the Musical or subsequent distribution of the Recording.  (*See* FAC ¶¶ 35-36, 46).  He does not assert, for example, that during the live productions filmed by BTN, the L&S Defendants named the contributors to the Musical and falsely attributed the Vocal Arrangements to Leiber and Stoller or someone else other than Plaintiff.  Nor does he allege a conveyance of the Recording from the L&S Defendants to SATV in connection with the 2007 sale of catalog publishing rights, to which conveyance false CMI could be connected.  There is nothing in the FAC that permits the Court to discern what CMI the L&S Defendants provided, when, to whom, and in what way it was false.  This lack of detail regarding how the L&S Defendants supposedly falsely "signaled authorship or copyright ownership [in

29

the Vocal Recordings] is particularly fatal to an attempt to allege CMI because the point of CMI is to inform the public that something is copyrighted." *Laser Kitten, LLC* v. *Mark Jacobs Int'l, LLC*, No. 17 Civ. 8613 (JFK), 2018 WL 4830091, at *4 (S.D.N.Y. Oct. 4, 2018) (internal quotation marks omitted) (citing *Aaberg* v. *Francesca's Collections, Inc.*, No. 17 Civ. 115 (AJN), 2018 WL 1583037, at *7 (S.D.N.Y. Mar. 27, 2018); *Tomelleri* v. *Zazzle, Inc.*, No. 13 Civ. 2576 (EFM) (TJJ), 2015 WL 8375083, at *12 (D. Kan. Dec. 9, 2015) (finding no false CMI under § 1202(a) where plaintiffs failed to allege facts from which the court could infer a claim of ownership or authorship)).

In any event, as discussed previously, the statute of limitations on actions under Title 17 is three years.  17 U.S.C. § 507(b).  Plaintiff was aware of the Recording and its distribution in 2000 (FAC ¶ 40), and therefore would have been aware at that same time of the CMI originally disseminated along with the Recording.  In other words, had the L&S Defendants provided false CMI in connection with the performance of the Musical when it was recorded by BTN, Plaintiff would have known no later than 2000.  Thus, his claim, brought in 2019, is untimely.  Accordingly, the Court grants the L&S Defendants' motion to dismiss Plaintiff's § 1202(a) claim.

* * *

In summary, with respect to the L&S Defendants, the Court concludes that Plaintiff's copyright infringement claim is untimely, his unjust enrichment claim is preempted by the Copyright Act, and his claim for provision or

dissemination of false CMI is inadequately pleaded.  The Court therefore grants
the L&S Defendants' motion to dismiss in full.

**D.    The Court Grants SATV's Motion to Dismiss**

Plaintiff's claims against Defendant SATV are the same as those against
the L&S Defendants: contributory copyright infringement (FAC ¶¶ 73-89),
unjust enrichment (*id.* at ¶¶ 104-19), and dissemination of false CMI (*id.* at
¶¶ 90-103).  And SATV's arguments for dismissal are nearly identical to those
presented by the L&S Defendants.  Consequently, the Court's analysis of the
relevant facts and legal principles is brief.

**1.    Plaintiff's Contributory Copyright Infringement Claim Fails**

As alleged, in 2007, SATV purchased the rights to administer the L&S
Defendants' catalog of works.  (FAC ¶ 46).  In 2018, without notice to Plaintiff,
SATV granted Broadway Worldwide additional distribution rights for the
Musical.  (*Id.* at ¶ 47).  Broadway Worldwide then purported to grant those
rights to BroadwayHD for digital streaming over its platform and through
Amazon.  (*Id.* at ¶¶ 48-49).  Plaintiff asserts that SATV "had actual or
constructive knowledge of the infringing acts of Brandwen, BroadwayHD, BTN,
Broadway Worldwide and Amazon" (*id.* at ¶ 75); "knew that such distribution
would result in further downstream infringement" (*id.* at ¶ 79); and "provided
the tools and support for the infringement by Defendants BroadwayHD and/or
Amazon" (*id.* at ¶ 80).

Like the L&S Defendants, SATV argues that Plaintiff's contributory
copyright claim is time-barred because it is an ownership claim that accrued in

1999, when the Recording was created without Plaintiff's permission. (SATV Br. 2, 15-17). SATV asserts that "[b]ecause the FAC alleges that SATV is a successor-in-interest to the L&S Defendants who allegedly sold it the Vocal Arrangements, the copyright claim against SATV also accrued in 1999." (*Id.* at 17 n.4). That is, because Plaintiff alleges that SATV "now apparently purports to own the same rights that [the L&S Defendants] purported to possess" in Plaintiff's Vocal Arrangements (FAC ¶ 114), the date at which Plaintiff became aware of the L&S Defendants' assertion of ownership is also dispositive of the viability of Plaintiff's claim against SATV. *See Cole* v. *Blackwell Fuller Music Publ'g, LLC*, No. 16 Civ. 7014 (VSB), 2018 WL 4680989, at *5-6 (S.D.N.Y. Sept. 28, 2018) (holding that ownership claim accrued when plaintiff knew or should have known that defendants' predecessors-in-interest held themselves out as the copyright owners of the work); *Poindexter* v. *Warner/Chappell Music Inc.*, No. 06 Civ. 3403 (LTS) (DCF), 2009 WL 302064, at *4 (S.D.N.Y. Feb. 9, 2009) (on summary judgment, holding that ownership claim accrued when plaintiff knew that defendant's predecessor-in-interest claimed the right to publish songs co-written by plaintiff).

Plaintiff does not dispute that SATV should be considered a successor-in-interest to the L&S Defendants for these purposes. Rather, he denies that he pleaded an ownership claim. (Pl. L&S and SATV Opp. 18-20). As explained above, the Court finds that Plaintiff has pleaded an untimely ownership claim against the L&S Defendants, and now reaches the same conclusion with respect to SATV as the L&S Defendants' purported successor-in-interest to the

copyright in the Musical.  Plaintiff's infringement claims against SATV that derive from this original ownership claim are likewise time-barred.  *See Kwan*, 634 F.3d at 229-30.  Accordingly, Plaintiff's contributory copyright infringement claim against SATV is dismissed.

### 2. Plaintiff's Unjust Enrichment Claim Against SATV Is Preempted by the Copyright Act

Plaintiff's unjust enrichment claim against SATV is in all substantive ways identical to his claim against the L&S Defendants.  (*See* FAC ¶¶ 104-19). For the reasons discussed above, it is likewise preempted by the Copyright Act and dismissed.

### 3. Plaintiff's False CMI Claim Against SATV Fails

As stated previously, Plaintiff's allegations in support of his false CMI claim do not differentiate among the Defendants.  (*See* FAC ¶¶ 90-103).  Just as with respect to the L&S Defendants, the FAC does not contain facts that put SATV on notice of the type of CMI it allegedly provided or distributed, when, to whom, and in what way it was false.  (*See id.*).  The sole allegation involving SATV that falls within the limitations period is that "in 2018, without notice to Roberts, Broadway Worldwide entered into a new license purportedly receiving further and new distribution rights for the Recording from Sony/ATV."  (*Id.* at ¶ 47).  Critically, Plaintiff does not allege SATV conveyed a copy of the Recording to Broadway Worldwide at this time and that such copy was accompanied by any CMI, let alone false CMI.  Accordingly, Plaintiff fails to state a claim against SATV under 17 U.S.C. § 1202(a).

**E.     The Court Reserves Decision on Plaintiff's Request for Leave to Amend**

In light of the Court's conclusions above, the Court considers Plaintiff's request that he be granted leave to file a Second Amended Complaint correcting deficiencies in the FAC.  (Pl. L&S and SATV Opp. 31).  Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  Federal courts "interpret[] Rule 15 to permit such amendments only when [i] the party seeking the amendment has not unduly delayed, [ii] when that party is not acting in bad faith or with a dilatory motive, [iii] when the opposing party will not be unduly prejudiced by the amendment, and [iv] when the amendment is not futile." *E*Trade Fin. Corp.* v. *Deutsche Bank AG*, 420 F. Supp. 2d 273, 282 (S.D.N.Y. Mar. 6, 2006) (citing *Foman* v. *Davis*, 371 U.S. 178, 182 (1962); *Mackensworth* v. *S.S. Am. Merchant*, 28 F.3d 246, 251 (2d Cir. 1994); *Prudential Ins. Co.* v. *BMC Indus., Inc.*, 655 F. Supp. 710, 711 (S.D.N.Y. 1987)).  Although the L&S Defendants request dismissal with prejudice and without leave to amend (*see* L&S Br. 25; L&S Reply 10), they give no reasons why Plaintiff should be denied the opportunity to amend.  The Court sees no ground for denial on account of the first three factors, as there is no evidence that Plaintiff has unduly delayed in seeking to amend or is acting in bad faith or with a dilatory motive, or that the L&S Defendants will be unduly prejudiced by amendment.

Nevertheless, the Court is concerned that the repleading of certain of Plaintiff's claims against the L&S Defendants and SATV may be futile.  "An amendment is considered futile if the amended pleading fails to state a claim or

34

would be subject to a successful motion to dismiss on some other basis."
*E\*Trade*, 420 F. Supp. 2d at 282; *see also F5 Capital* v. *Pappas*, 856 F.3d 61,
89 (2d Cir. 2017) ("'A proposed amendment to a complaint is futile when it
could not withstand a motion to dismiss.'" (quoting *Balintulo* v. *Ford Motor Co.*,
796 F.3d 160, 164-65 (2d Cir. 2015)).  For the purposes of evaluating futility,
courts apply the standard of Rule 12(b)(6), accepting all well-pleaded
allegations as true and drawing all reasonable inferences in favor of the
plaintiff.  *See E\*Trade*, 420 F. Supp. 2d at 282 (citing *Mills* v. *Polar Molecular
Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993)).  "In order to prove that amendment
would not be futile, [a plaintiff] must, '[a]t the very least ... provide some
indication of the substance of the contemplated amendment in order to allow
the Court to apply the standards governing Rule 15(a).'"  *United States ex. rel.
Hussain* v. *CDM Smith, Inc.*, No. 14 Civ. 9107 (JPO), 2018 WL 11217206, at \*1
(S.D.N.Y. Jan. 31, 2018) (quoting *St. Clair Shores Gen. Emps. Ret. Sys.* v.
*Eibeler*, 745 F. Supp. 2d 303, 316 (S.D.N.Y. 2010)).

Plaintiff does not propose any specific amendments for the Court to
assess.  Accordingly, the Court hereby ORDERS the parties to appear for a
video conference on **February 25, 2021, at 11:00 a.m.**, during which
conference the Court intends to discuss Plaintiff's anticipated amendments.
Access instructions will be provided in advance of the conference.

## CONCLUSION

For the reasons set forth above, the Court DENIES Defendant Bruce Brandwen's motion to dismiss; GRANTS the L&S Defendants' motion to dismiss; and GRANTS Defendant SATV's motion to dismiss.  The Court reserves decision on Plaintiff's request for leave to file a Second Amended Complaint.

The Clerk of Court is directed to terminate the motions at docket numbers 79, 86, 87, 90, 107, and 110.

SO ORDERED.

Dated:   February 9, 2021
       New York, New York

                                                KATHERINE POLK FAILLA
                                   United States District Judge