UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHAPMAN ROBERTS,

                                    Plaintiff,

                    -v.-

BROADWAYHD LLC, BROADWAY TELEVISION
NETWORK, INC., BROADWAY WORLDWIDE,
INC., BROADWAYONLINE.COM, INC., BRUCE
BRANDWEN PRODUCTIONS, INC., BRUCE
BRANDWEN, LEIBER STOLLER PRODUCTIONS,
INC., MICHAEL STOLLER, THE ESTATE OF
JEROME LEIBER, AMAZON DIGITAL SERVICES
LLC, and SONY/ATV MUSIC PUBLISHING LLC,

                                    Defendants.

19 Civ. 9200 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

Plaintiff Chapman Roberts is the creator of vocal arrangements for several Broadway and West End shows. In 1994, he created vocal arrangements (the "Vocal Arrangements") for the hit Broadway musical *Smokey Joe's Café* (the "Musical"), and later registered an exclusive copyright in the Vocal Arrangements. The present case alleges Defendants' unauthorized creation, licensing, and distribution of a recording of the Musical that includes the Vocal Arrangements. For their alleged roles in these acts, Plaintiff brings claims against Defendants for direct and contributory copyright infringement under the Copyright Act, Pub. L. No. 94-553, 90 Stat. 2541 (1976); for dissemination of false copyright management information ("CMI") under the Digital Millennium Copyright Act, Pub. L. No. 105-304, 112 Stat. 2860 (1998); and for unjust enrichment under the common law.

In this second round of dispositive motion practice, BroadwayHD and
Amazon Digital Services LLC ("BroadwayHD and Amazon"); Leiber Stoller
Productions, Inc., Michael Stoller, and the Estate of Jerome Leiber (the "L&S
Defendants"); and Sony/ATV Music Publishing, LLC ("SATV," and collectively,
the "Moving Defendants") have separately moved to dismiss Plaintiff's claims
against them for failure to state a claim pursuant to Federal Rule of Civil
Procedure 12(b)(6).  For the reasons that follow, the Court grants the L&S
Defendants' and SATV's motions to dismiss Plaintiff's unjust enrichment claim,
but denies the remainder of the Moving Defendants' motions.

## BACKGROUND[1]

The Moving Defendants' present motions follow the Court's February 9,
2021 Opinion and Order granting in part and denying in part certain of their
motions to dismiss the First Amended Complaint.  (Dkt. #122; *see also* Dkt.

---

[1]  The facts in this Opinion are drawn primarily from Plaintiff's Second Amended
Complaint (the "SAC" (Dkt. #127)), which is the operative pleading in this case.  The
Court also sources additional facts from various declarations that contain materials
that are incorporated by reference in, or integral to, the SAC.  These declarations
include: (i) the declaration of Bruce Brandwen in support of his motion to dismiss the
First Amended Complaint (the "FAC") ("Brandwen Decl." (Dkt. #91)); (ii) the declaration
of Alexandra Mitton in opposition to Bruce Brandwen's motion to dismiss the FAC
("Mitton Decl." (Dkt. #97)); (iii) the declaration of C. Linna Chen in support of SATV's
motion to dismiss the FAC ("Chen Decl." (Dkt. #108)); (iv) the declaration of Randy Poe
in support of the L&S Defendants' motion to dismiss the FAC ("Poe Decl." (Dkt. #112));
and (v) the declaration of David Leichtman in opposition to Defendants' motions to
dismiss the FAC ("Leichtman Decl." (Dkt. #115)).

For ease of reference, the Court refers to SATV's memorandum of law in support of its
motion as "SATV Br." (Dkt. #136); BroadwayHD and Amazon's memorandum of law in
support of their motion as "BHD & Amazon Br." (Dkt. #138); the L&S Defendants'
memorandum of law in support of their motion as "L&S Br." (Dkt. #140); Plaintiff's
consolidated memorandum of law in opposition to the Moving Defendants' motions as
"Pl. Opp." (Dkt. #149); SATV's reply memorandum of law as "SATV Reply" (Dkt. #152);
BroadwayHD and Amazon's reply memorandum of law as "BHD & Amazon Reply" (Dkt.
#154); and the L&S Defendants' reply memorandum of law as "L&S Reply" (Dkt. #153).

#41 (FAC)).[2]  *See Roberts* v. *BroadwayHD LLC*, 518 F. Supp. 3d 719 (S.D.N.Y.

2021) ("*Roberts I*").  Given the Court's extensive discussion of the factual and

procedural backgrounds of this case in *Roberts I*, it focuses here on the

developments that have occurred since that decision.

## A.    Factual Background

Broadly speaking, the SAC presents the same factual narrative that was

addressed in *Roberts I*.  *See Roberts I*, 518 F. Supp. 3d at 723-26 (recounting

the factual background alleged in the FAC).  To review, in 1994, non-party L&S

Broadway Company, the original producer of the Musical, asked Plaintiff to

create the Vocal Arrangements.  (SAC ¶¶ 31-33).  Plaintiff assented, and the

parties reached an agreement whereby Plaintiff would own the rights to the

Vocal Arrangements and L&S Broadway would receive a license to perform the

Vocal Arrangements "in limited types of live performances and to record a cast

album of the original Broadway cast of the Musical" (the "Vocal Arranger

Agreement").  (*Id.* at ¶ 34).  The Vocal Arranger Agreement further provided that

the Vocal Arrangements could "not be performed, transcribed, recreated,

copied, published, or recorded without express permission from Roberts."  (*Id.*).

Plaintiff alleges that "some time in 1999, L&S Broadway's" rights under the

Vocal Arranger Agreement "reverted to" the L&S Defendants.  (*Id.* at ¶ 39).[3]

---

[2]      BroadwayHD and Amazon did not move to dismiss the FAC, choosing instead to file
answers.  (*See* Dkt. #61 (BroadwayHD), 70 (Amazon)).

[3]      Defendants Leiber (who passed away in 2011) and Stoller were songwriters and the
owners and operators of Jerry Leiber Music, Mike Stoller Music, Mike and Jerry Music
LLC, and Trio Music Company, Inc., all of which were predecessor entities to Leiber
Stoller Productions, Inc.  (SAC ¶ 5).

Following the execution of the Vocal Arranger Agreement, Plaintiff registered the Vocal Arrangements with the U.S Copyright Office under Reg. No. PAu 1-994-441, with an effective date of May 23, 1995. (SAC ¶ 8; *see also id.* at Ex. A (registration certificate)). Plaintiff alleges that he is the "sole and exclusive owner of the copyright in the Vocal Arrangements." (*Id.* at ¶ 8).

According to Plaintiff, BroadwayHD began offering a live recording of *Smokey Joe's Café* (the "Recording") for on-demand streaming in September 2019 (SAC ¶ 78), purporting to have received the rights to do so from Broadway Worldwide (*id.* at ¶ 9). Broadway Worldwide, in turn, claims to have received the rights to use the Recording from SATV and Leiber Stoller Productions. (*Id.* at ¶ 10). Plaintiff alleges that, in fact, none of these defendants received permission from, nor compensated, Plaintiff for the use or licensing of his copyrighted Vocal Arrangements in the Recording. (*Id.* at ¶ 11).

The SAC supplements the FAC by adding allegations to support Plaintiff's contention that, at all relevant times, the L&S Defendants and SATV were fully aware of Plaintiff's exclusive ownership rights over the Vocal Arrangements. The first point of departure between the two complaints is the SAC's discussion of a 1999 agreement between Leiber and Stoller and The Rogers & Hammerstein Organization ("R&H"). (SAC ¶ 40). Plaintiff alleges that in November 1999, "Leiber and Stoller granted exclusive rights to [R&H] to license stock, amateur and Second Class Live Theatrical productions of the Musical" (the "1999 R&H-L&S Agreement"). (*Id.*). He alleges in connection with this agreement that "Leiber and Stoller demonstrated their knowledge of Roberts'

4

rights and ownership of the Vocal Arrangements … by advising R&H in that agreement of the obligation for R&H to pay royalties to Roberts for certain Second Class Theatrical productions as required by the Vocal Arranger Agreement." (*Id.*).  According to Plaintiff, "[n]othing in the 1999 R&H-L&S Agreement purports to assert ownership of the Vocal Arrangements by any of the parties to that agreement," and he never saw the 1999 R&H-L&S Agreement until late 2020 in connection with a separate litigation.  (*Id.*).

The next addition to the SAC is an extended discussion of a series of three agreements, each of which was executed on December 3, 1999, between Broadway Television Network ("BTN"), "a worldwide distributor of recorded Broadway performances" (SAC ¶ 4); L&S Broadway; and certain of the L&S Defendants (the "1999 Agreements").  In the FAC, Plaintiff alleged that following his creation of the Vocal Arrangements, in or around 1998 or 1999, "L&S or Leiber Stoller Productions (or its predecessors) … gave Defendant BTN permission to create a video recording of the Musical without permission from, or notice to, Roberts."  (FAC ¶ 35).  By contrast, the SAC sets forth in significant detail the parties and terms of each of the 1999 Agreements.  (*See* SAC ¶¶ 41-48; *see also* Dkt. #133 (transcript of conference of February 25, 2021 ("Feb. 25 Tr.")) at 16:22-17:1 (Plaintiff's counsel stating that "[a]t the time we filed the first amended complaint … we only had one of [the 1999 Agreements] … [S]ince that time all of these others have surfaced in various state court papers and I think private discussions we've had.")).

The first of the 1999 Agreements, the Producer's Agreement, was entered into between L&S Broadway and BTN, and granted BTN permission to video-record the Musical.  (Brandwen Decl., Ex. C ("1999 Producer's Agreement")). The 1999 Producer's Agreement stated that BTN would need to obtain permission from Plaintiff to record and use the Vocal Arrangements, providing specifically that "BTN shall, with respect to the Musical, obtain[,] honor or enter into agreements for securing all necessary rights and consents" from, among other people, "Chapman Roberts."  (*Id.*, § 4(b)).  According to Plaintiff, neither L&S Broadway nor BTN notified him of this Agreement.  (SAC ¶ 41). Plaintiff also maintains that "[n]othing in the 1999 Producer's Agreement purports to claim ownership in Roberts' Vocal Arrangements by any of the parties to that agreement." (*Id.*).  Plaintiff further alleges that he did not see a copy of the 1999 Producer's Agreement until June 3, 2020, when it was filed in this action.  (*Id.*; *see also* Brandwen Decl. ¶ 3 (attaching the 1999 Producer's Agreement in support of earlier motion to dismiss the FAC)).

The second of the 1999 Agreements is the Author's Agreement.  (SAC ¶ 43; *see also* Poe Decl., Ex. 1 ("1999 Author's Agreement")).  The 1999 Author's Agreement was entered into between Leiber and Stoller, as individuals, and BTN, and authorized BTN to record and broadcast the Musical.  (1999 Author's Agreement, § 1(a)).  In contrast with the 1999 Producer's Agreement, Plaintiff alleges that the 1999 Author's Agreement purported to grant an unauthorized license to the Vocal Arrangements to BTN. (SAC ¶ 43).  It did so, Plaintiff contends, by granting BTN the rights to record

and broadcast the "Musical as staged," which at that time was being performed using the Vocal Arrangements, without excluding the Vocal Arrangements from that grant of rights. (*Id.*). Indeed, unlike the 1999 Producer's Agreement, the 1999 Author's Agreement did not explicitly direct BTN to secure Plaintiff's authorization to use the Recording. It instead provided that "BTN hereby acknowledges that Author is not hereby granting to BTN certain rights in the Musical necessary for the exploitation of the Program," including rights owned by a list of individuals that did *not* include Plaintiff. (1999 Author's Agreement, § 1(b)). Plaintiff maintains that, notwithstanding this unauthorized licensing of the Vocal Arrangements, nothing in the 1999 Author Agreement "expressly asserted ownership rights in the Vocal Arrangements." (SAC ¶ 43). Plaintiff did not receive a copy of the 1999 Author's Agreement until April 22, 2020, when counsel for the L&S Defendants provided it to him. (*Id.*).

The third and final of the 1999 Agreements is the Publisher Agreement, which was entered into by BTN and certain predecessor entities to Leiber Stoller Productions. (SAC ¶ 44; *see also* Leichtman Decl., Ex. B ("1999 Publisher Agreement")). Plaintiff recounts that on December 3, 1999, "Leiber & Stoller (or its predecessor), in its capacity as the music publishing entity for Leiber and Stoller," entered into the 1999 Publisher Agreement with BTN, which "permit[ed] BTN to record and broadcast the musical compositions in the Musical[.]" (SAC ¶ 44; *see also* 1999 Publisher Agreement). As with the 1999 Producer's and Author's Agreements, Plaintiff maintains that nothing in the 1999 Publisher Agreement "expressly asserted ownership rights in the Vocal

7

Arrangements." (SAC ¶ 44).  Plaintiff did not see the 1999 Publisher Agreement until December 9, 2019, the date on which counsel for the Brandwen Defendants sent a copy of it to Plaintiff's counsel.  (*Id.*).[4]

In addition to expanding upon the 1999 Agreements, the SAC also references certain exchanges between Plaintiff's former counsel and counsel for BTN.  (SAC ¶¶ 49-51).  The first of these exchanges is a letter dated September 6, 2000, from Plaintiff's former counsel to BTN's counsel.  (Mitton Decl., Ex. 2).  In the letter, Plaintiff's former counsel states, among other things, that:

> Mr. Roberts and I have decided that we will not institute litigation for the purpose of stopping your client from exhibiting *Smokey Joe's Café* on pay per view television on September 10 through domestic and foreign cable and satellite systems.  Instead, we insist upon immediate negotiations for the purpose of reaching agreement as to the appropriate compensation to Mr. Roberts for the use of his vocal arrangements in that one night exhibition.  We believe that your client, as well as the L&S Broadway Company Limited Partnership, are under the clear duty to negotiate in good faith with Mr. Roberts for the purpose of reaching agreement.  To date, neither has satisfied that duty.  Unless BTN and L&S Broadway Company immediately enter into those negotiations with Mr. Roberts, and unless an agreement is reached, we will sue BTN and L&S Broadway Company Limited Partnership for damages for the unauthorized use of the arrangements.

(*Id.*).  The second exchange is an email from BTN's counsel to Plaintiff's former counsel, dated September 11, 2000, stating that this correspondence "will confirm that our last offer to your client, Chapman Roberts, was not accepted."

---

[4]   The Brandwen Defendants include Bruce Brandwen, BTN, Broadway Worldwide, Brandwen Productions, and BroadwayOnline.com.  (SAC ¶ 4).

(*Id.*, Ex. 3).  The email then states that BTN was formally withdrawing its offer, but that it "remain[ed] ready, willing and able to conclude an agreement with your client that is comprehensive as to all uses of the program that is reasonable and consistent with industry standards."  (*Id.*).

The SAC also alleges additional facts concerning SATV's involvement in the alleged unauthorized licensing of the Vocal Arrangements.  While the FAC alleged that Leiber Stoller Productions either sold its publishing rights or granted the rights to administer the catalog to SATV for approximately $50 million in 2007 (FAC ¶ 46), the SAC adds that Plaintiff "was not in possession of any documents indicating the scope of rights being transferred … to Sony/ATV" until he received the first of these documents in March 2020 and the second in August 2020 (SAC ¶¶ 62, 63).  These documents include: (i) the Sony Acquisition Agreement (SAC ¶ 62; *see also* Chen Decl., Ex. B) and (ii) the Sony Administration Rights Agreement (SAC ¶ 63; *see also* Chen Decl., Ex. C).

The Sony Acquisition Agreement was entered into by Leiber, Stoller, certain Leiber Stoller Production predecessor entities, and SATV on March 31, 2007.  (*See* Sony Acquisition Agreement).  Plaintiff alleges that this agreement obligated SATV to "pay Roberts for exploitations of the Musical and not to license his Vocal Arrangements without his permission[.]"  (SAC ¶ 62).  According to Plaintiff, the Sony Acquisition Agreement imposed this obligation on SATV because it transferred the L&S Defendants' rights and obligations to SATV and did not "expressly exclude[ ]" these obligations from its terms.  (*Id.*).  As with the 1999 Agreements, Plaintiff asserts that "nothing in the Sony

9

Acquisition Agreement purports to grant ownership of Roberts' Vocal Arrangements to Sony/ATV." (*Id.*).

The Sony Administration Rights Agreement was executed on April 1, 2007, by the same parties who entered into the Sony Acquisition Agreement. (SAC ¶ 63). Plaintiff contends that the Sony Administration Rights Agreement also did not exclude the obligations to pay Plaintiff for exploitation of the Musical and not to license his Vocal Arrangements without his permission, such that these obligations transferred to SATV. (*Id.*). Plaintiff again alleges that "nothing in the Sony Administration Rights Agreement purports to grant ownership of Roberts' Vocal Arrangements to Sony/ATV." (*Id.*).

Beyond alleging new details concerning the 1999 Agreements and the Sony Agreements, the SAC includes new allegations related to an Off-Broadway revival of the Musical in Spring 2018. (SAC ¶ 65). Plaintiff alleges that in or about April of that year, he learned that certain of the original producers were mounting an Off-Broadway revival of the Musical using the Vocal Arrangements. (*Id.* at ¶ 66).[5] After Plaintiff objected to their use of the Vocal Arrangements in the revival, the producers sent him a draft agreement to permit them to use the Vocal Arrangements. (*Id.*). "In that draft agreement," Plaintiff alleges, "Mr. Roberts was asked by producers of the revival to acknowledge that Sony/ATV owned the rights in the Vocal Arrangements." (*Id.*). Plaintiff further alleges that this was the first time he had ever been put

---

[5]     Plaintiff does not identify the specific producers involved in the revival. (*See* SAC ¶ 66).

on notice that SATV or any other party was claiming ownership of the Vocal Arrangements.  (*Id.*).  Although Plaintiff alleges that the revival producers advised him that SATV had represented that it owned the Vocal Arrangements and told the producers to include the ownership language in the draft agreement (*id.*), SATV denies these allegations and disclaims ownership of the copyright in the Vocal Arrangements (*id.* at ¶ 67).

Lastly, the SAC expands upon the events culminating in the Musical's broadcast on BroadwayHD and Amazon.  Plaintiff alleges that Broadway Worldwide (as successor to BTN) approached the L&S Defendants to revive the 1999 Agreements, which had expired in 2013.  (SAC ¶ 69).  The L&S Defendants advised Broadway Worldwide that it needed to seek a license from SATV because SATV was now the owner and administrator of the L&S Defendants' rights pursuant to the Sony Agreements.  (*Id.* at ¶ 70).  Thereafter, SATV granted Broadway Worldwide a Synchronization License for distribution rights of the Recording.  (*Id.* at ¶ 71; *see also* Chen Decl., Ex. D (the "Sync License")).[6]  Broadway Worldwide then purported to grant its rights to the Recording to BroadwayHD (*id.* at ¶ 74), which used the Recording to promote its service and its other titles and streamed the Recording on the internet, including over its own platform and through Amazon's services (*id.* at ¶ 75). According to Plaintiff, Broadway Worldwide, BroadwayHD, and Amazon were

---

[6]     *See generally ABKCO Music, Inc.* v. *Sagan*, 500 F. Supp. 3d 199, 207 (S.D.N.Y. 2020) ("A synchronization license is typically used when pairing recorded music with images."); *Freeplay Music, Inc.* v. *Cox Radio, Inc.*, 409 F. Supp. 2d 259, 261 (S.D.N.Y. 2005) (discussing synchronization rights under Second Circuit law).

aware of Plaintiff's exclusive rights to the Vocal Arrangements (*id.* at ¶¶ 88-89), and none of these defendants had a valid license to record or use the Vocal Arrangements for any media distribution or exploitation (*id.* at ¶ 76).

## B.   Procedural Background

In *Roberts I*, the Court found that Plaintiff had plausibly stated claims against Bruce Brandwen for copyright infringement, contributory copyright infringement, and dissemination of false CMI.  *Roberts I*, 518 F. Supp. 3d at 727-29.  Conversely, the Court dismissed Plaintiff's claim for distribution of false CMI asserted against the L&S Defendants.  The Court further held that Plaintiff's contributory copyright infringement claim against the L&S Defendants and SATV raised a dispute as to the lawful owner of the Vocal Arrangements that had accrued in 1999, and thus was barred by the Copyright Act's three-year statute of limitations.  *Id.* at 731-32, 738.  The Court also found that Plaintiff's unjust enrichment claim against the same defendants was preempted by the Copyright Act.  *Id.* at 733-35 (L&S), 738 (SATV).  Lastly, the Court reserved decision on Plaintiff's request for leave to amend the FAC, ordering the parties to appear for a video conference on February 25, 2021, to discuss Plaintiff's anticipated amendments.  *Id.* at 739.

On February 16, 2021, one week after the Court issued *Roberts I*, SATV filed a letter on behalf of all Defendants requesting (i) an extension of time to file a motion for attorneys' fees and (ii) an order directing Plaintiff to disclose his contemplated amendments to the complaint.  (Dkt. #123).  The Court endorsed SATV's letter that same day, declining to address Defendants' first

request in light of Plaintiff's pending request for leave to amend and directing Plaintiff to file a letter outlining his proposed amendments on or before February 22, 2021.  (Dkt. #124).

On February 22, 2021, Plaintiff filed a letter outlining his proposed second amended complaint and including a copy of that complaint.  (Dkt. #125).  In his letter, Plaintiff explained in broad terms that he wished to amend his claims against the L&S Defendants and SATV.  With respect to his contributory copyright claim against these defendants, Plaintiff stated that the primary purposes of his amendments were (i) to "clarify the factual basis for why this case does not involve a dispute over copyright ownership" and (ii) to "elucidate why, respectfully, our client believes the Court may have mistakenly misconstrued or misunderstood the allegations in Paragraphs 35-36 of the FAC as sounding like an ownership claim."  (*Id.* at 1).  Plaintiff also explained with respect to his unjust enrichment claim that the proposed second amended complaint would "address the manifest injustice that would occur should the" L&S Defendants and SATV "continue to collect royalties for the use of Roberts' vocal arrangements, to the exclusion of Roberts."  (*Id.* at 4).  Lastly, Plaintiff stated that the proposed second amended complaint would not seek to revive the CMI claim against the L&S Defendants or SATV.  (*Id.* at 5).

As directed in *Roberts I*, the parties appeared for a video conference to discuss Plaintiff's proposed second amended complaint on February 25, 2021. (*See generally* Feb. 25 Tr.).  During this conference, the Court heard argument from all sides concerning the viability of Plaintiff's proposed amendments to his

contributory copyright infringement and unjust enrichment claims. (*See generally id.*). At the conclusion of the conference, the Court stated that it doubted Plaintiff's ability to state a viable unjust enrichment claim, but would nevertheless permit him to amend his pleading to include both contributory copyright infringement and unjust enrichment claims against the L&S Defendants and SATV. (*Id.* at 34:17-35:1).

Plaintiff filed the Second Amended Complaint, which is the operative pleading in this matter, on March 5, 2021. (Dkt. #127). On April 19, 2021, SATV; BroadwayHD and Amazon; and the L&S Defendants filed separate motions to dismiss the SAC. (Dkt. #135-136 (SATV); 137-138 (BroadwayHD and Amazon); #139-140 (L&S Defendants)). On May 21, 2021, Plaintiff filed a consolidated brief and supporting declaration in opposition to the Moving Defendants' motions. (Dkt. #148-149). On June 11, 2021, the Moving Defendants filed reply briefs in further support of their motions. (Dkt. #152 (SATV); #153 (L&S Defendants); #154 (BroadwayHD and Amazon)). Accordingly, the motions are fully briefed and ripe for the Court's decision.

## DISCUSSION

### A.   Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  When evaluating the viability of a plaintiff's claim, the Court must "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  That said, the Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations."  *Rothstein* v. *UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

On a motion to dismiss, the Court may consider any written instrument attached to the complaint as an exhibit, any statements or documents incorporated by reference in the complaint, documents that are "integral" to the complaint even if they are not incorporated by reference, and matters of which judicial notice may be taken.  *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing materials that may properly be considered in resolving a motion brought under Fed. R. Civ. P. 12(b)(6)).

In this case, the Court considers four sets of documents that are either referenced in or integral to the SAC.  The first set of documents is the 1999 Agreements, including: (i) the 1999 Producer's Agreement; (ii) the 1999 Author's Agreement; and (iii) the 1999 Publisher Agreement.  The second set of documents consists of the Sony Agreements, including (i) the Sony Acquisition Agreement and (ii) the Sony Administration Rights Agreement.  The third set of documents includes the Sync License that SATV granted to Broadway

Worldwide.  The fourth and final set of documents comprises the communications exchanged between Plaintiff's former counsel and counsel for BTN.  As discussed earlier, each of these documents is referenced in and relied upon by the SAC.  (*See also* Feb. 25 Tr. 16:13-17:7 (Plaintiff's counsel agreeing that the 1999 Agreements may be considered at this stage)).

## B.   Plaintiff Has Pleaded Copyright Infringement Claims, Rather Than Ownership Claims

Plaintiff asserts claims for contributory copyright infringement against the L&S Defendants and SATV and for direct copyright infringement against BroadwayHD and Amazon.  The Moving Defendants argue that Plaintiff's claims must be dismissed because such claims are barred by the Copyright Act's three-year statute of limitations.  As in *Roberts I*, whether Plaintiff's claims are timely turns on whether they are copyright *ownership* claims or instead copyright *infringement* claims.  *See Roberts I*, 518 F. Supp. 3d at 730-32.  As explained below, the Court finds that the SAC pleads infringement, rather than ownership, claims.

### 1.   Applicable Law

The Copyright Act provides that "[n]o civil action shall be maintained under the [Act] unless it is commenced within three years after the claim accrued."  17 U.S.C. § 507(b).  Generally, "an infringement action may be commenced within three years of *any* infringing act, regardless of any prior acts of infringement[.]"  *Kwan* v. *Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) (emphasis in original); *see also Petrella* v. *Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014) (observing that under the Copyright Act "an infringement is

actionable within three years, and only three years, of its occurrence"). The rule is different, however, when "ownership is the dispositive issue[.]" *Kwan*, 634 F.3d at 230. "The Second Circuit has held that when 'ownership is the dispositive issue' in an infringement claim and the 'ownership claim is time-barred,' then the infringement claim itself is time-barred, even if there had been infringing activity in the three years preceding the lawsuit." *Charles* v. *Seinfeld*, 410 F. Supp. 3d 656, 659 (S.D.N.Y. 2019) (quoting *Kwan*, 634 F.3d at 230), *aff'd*, 803 F. App'x 550 (2d Cir. 2020) (summary order).

To determine whether a claim is an ownership or infringement claim, courts look beyond the label affixed to the claim and consider whether the parties' dispute will require the court to resolve contested issues of ownership. "In many infringement cases, the first element (ownership) is not in dispute," making the "nature, extent or scope, of copying" the "backbone" of the claim. *Kwan*, 634 F.3d at 229.[7] "For example, when Bright Tunes sued former Beatles guitarist George Harrison for infringing the copyright in 'He's So Fine,' there was no question that Bright Tunes owned the copyright to the song." *Id.* (citing *Bright Tunes Music Corp.* v. *Harrisongs Music, Ltd.,* 420 F. Supp. 177 (S.D.N.Y. 1976)). "The issue was whether, in creating 'My Sweet Lord,' Harrison had copied too much from 'He's So Fine.'" *Id.* As such, Bright Tunes' claim was properly viewed as an infringement, not an ownership, claim. *Id.*

---

[7]    "To establish infringement, two elements must be proven: [i] ownership of a valid copyright, and [ii] copying of constituent elements of the work that are original." *Feist Publ'ns, Inc.* v. *Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

Conversely, in ownership cases, the core dispute is whether the plaintiff owns the underlying intellectual property. *See Flo & Eddie, Inc.* v. *Sirius XM Radio Inc.*, 80 F. Supp. 3d 535, 542-43 (S.D.N.Y. 2015) (explaining that "[i]n copyright ownership cases, the lawsuit is between two parties who claim ownership of the copyrights …, and one party's claim of infringement is entirely a function of whether the other party is the sole owner of the disputed copyrights"); *cf. PK Music Performance, Inc.* v. *Timberlake*, No. 16 Civ. 1215 (VSB), 2018 WL 4759737, at *6 (S.D.N.Y. Sept. 30, 2018) (stating that "it makes little sense to construe Plaintiff's infringement claim against Defendants as an ownership claim when none of the parties assert that Defendants have any ownership rights in" the underlying work).  Thus, for example, the Second Circuit found the claim alleged in *Kwan*, although styled as an infringement claim, to be an ownership claim, because the core issue was "whether Kwan's editorial contributions to [a book] were significant enough to qualify her as the author and therefore owner of the copyright in [the underlying intellectual property]." *Kwan*, 634 F.3d at 229; *see also, e.g., Ortiz* v. *Guitian Bros. Music Inc.*, No. 07 Civ. 3897 (RWS), 2008 WL 4449314, at *1-3 (S.D.N.Y. Sept. 29, 2008) (deeming copyright infringement claim arising out of dispute as to true owner of musical score to be ownership claim).

When distinguishing between ownership and infringement claims, courts consider (i) whether the plaintiff concedes in any filings that questions of ownership and authorship are at the heart of the claim; (ii) whether the plaintiff's copyright ownership is conceded by the defendant; and (iii) whether

the lawsuit is between two parties who claim ownership of the copyrights. *See Walker* v. *Carter*, 210 F. Supp. 3d 487, 505 (S.D.N.Y. 2016) (collecting cases); *see also Narrative Ark Ent. LLC* v. *Archie Comic Publ'ns, Inc.*, No. 16 Civ. 6109 (VB), 2019 WL 4142362, at *4 (S.D.N.Y. Aug. 29, 2019) (same).

### 2. Analysis

In *Roberts I,* the Court held that Plaintiff's contributory infringement claim against the L&S Defendants and SATV was in fact an ownership claim that had accrued in 1999, "when the L&S Defendants allegedly granted BTN an all-encompassing license to record and distribute the Musical." *Roberts I*, 518 F. Supp. 3d at 731-32. The Court based this finding on Plaintiff's allegations concerning the 1999 Agreements. *Id.* at 731. In particular, the Court observed that "Plaintiff alleges that, in 1998 or 1999, the L&S Defendants reassigned the rights to use the Vocal Arrangements amongst themselves and then granted BTN permission to record the Musical and commercially distribute the Recording without permission from Plaintiff." *Id.* It also noted that Plaintiff alleged that "SATV 'now apparently purports to own the same rights that Defendants Leiber, Stoller, and Leiber Stoller Productions purported to possess' with respect to Plaintiffs' Vocal Arrangements." *Id.* (quoting FAC ¶ 114). The Court concluded that "[t]hese allegations suggest an assertion of ownership by the L&S Defendants," *id.*, thus leading the Court to conclude that Plaintiff's contributory copyright infringement claim was time-barred.

The parties have devoted considerable attention to the issue of how to characterize Plaintiff's infringement claims after, and in light of, *Roberts I.* As

recounted earlier, Plaintiff's February 22, 2021 letter outlining his proposed second amended complaint addressed the issue at length.  (Dkt. #125).  He stated, in particular, that his amended pleading would "clarify the factual basis for why this case does not involve a dispute over copyright ownership" by pleading explicitly that "the L&S Defendants never asserted ownership over Roberts' vocal arrangements, and that Sony never asserted such ownership until 2018 (and which it has now disavowed)[.]"  (*Id.* at 1).  The parties debated the significance of these proposed amendments at the conference held on February 25, 2021 (*see generally* Feb. 25 Tr.); Plaintiff filed the SAC implementing the changes he had proposed (*see, e.g.*, SAC ¶¶ 39-48); and the parties briefed the issue at length (*see, e.g.*, L&S Br. 11-14; SATV Br. 14-17; BHD & Amazon Br. 5-10; Pl. Opp. 23-35).

Reiterating arguments made in connection with the FAC, the Moving Defendants urge the Court to find that Plaintiff has pleaded ownership claims in the SAC.  The L&S Defendants argue, for instance, that the "Court's analysis [in *Roberts I*] is equally applicable to [P]laintiff's repleaded contributory infringement claim[.]"  (L&S Br. 12).  In their view, Plaintiff's additions to the SAC — including the additions of the 1999 R&H-L&S Agreement, the 1999 Agreements, the Sony Agreements, and the letters exchanged between Plaintiff's former counsel and counsel for BTN — do not alter the underlying nature of Plaintiff's claims, which they argue "remain[ ] predicated upon [D]efendants' alleged assertion of ownership and control over the Vocal Arrangements through the creation and distribution of the Recording."  (*Id.* at

13).  "By [P]laintiff's theory," the L&S Defendants continue, "when the L&S
Defendants provided authority to record the Musical, as a whole, and granted
synchronization licenses in the Leiber and Stoller's compositions included in
the Musical, they *necessarily* exerted ownership and control over [P]laintiff's
Vocal Arrangements[.]"  (*Id.*).  SATV similarly argues that "[t]he allegations of
and documents incorporated by reference into the SAC establish that the
ownership claim over the Vocal Arrangements accrued in 2000," as
demonstrated by the fact that "Roberts was aware that third parties were using
his Vocal Arrangements without his permission, without crediting him, and
without compensating him, in a clear repudiation of his ownership."  (SATV
Br. 16-17).  Lastly, BroadwayHD and Amazon contend that "Plaintiff's latest
complaint is replete with allegations of decades-old repudiation and admissions
of contemporaneous knowledge of [the] repudiation" of his ownership interest.
(BHD & Amazon Br. 7).

   The Court finds that Plaintiff now pleads infringement, rather than
ownership, claims.  In contrast with the FAC, the SAC details the bases for
Plaintiff's claim that the L&S Defendants and SATV were aware that Plaintiff
was the exclusive owner of the Vocal Arrangements, but that both defendants
purported to license the Recording without his authorization.  (*See, e.g.*, SAC
¶¶ 40, 41, 43, 44, 62, 63, 64, 71).  Plaintiff's claim in essence is that the L&S
Defendants and SATV (i) received a limited license under the Vocal Arranger
Agreement, which allowed them "to perform the Vocal Arrangements in limited
types of live performances and to record a cast album of the original Broadway

cast of the musical" (*id.* at ¶ 34); and then (ii) exceeded the scope of that license by sublicensing the Vocal Arrangements for use in the Recording by BTN and later by Broadway Worldwide, BroadwayHD, and Amazon, all without Plaintiff's permission (*id.* at ¶¶ 47, 71).  Courts have recognized similar allegations as stating a claim for copyright infringement.  *See Fioranelli* v. *CBS Broad. Inc.*, 232 F. Supp. 3d 531, 537 (S.D.N.Y. 2017) (stating that "if 'a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement'" (quoting *BroadVision, Inc.* v. *Med. Protective Co.*, No. 08 Civ. 1478 (WHP), 2010 WL 5158129, at *3 (S.D.N.Y. Nov. 23, 2010)); *see also Spinelli* v. *Nat'l Football League*, 903 F.3d 185, 202 (2d Cir. 2018) (observing that "where an agreement licensed CBS's use of a journalist's videos and photographs in its own programming, but did not allow CBS to sublicense the journalist's materials, CBS's sublicenses to other companies exposed CBS to liability for copyright infringement" (citing *Fioranelli*, 232 F. Supp. 3d at 537)); *Al Hirschfeld Found.* v. *Margo Feiden Galleries Ltd.*, 296 F. Supp. 3d 627, 641 (S.D.N.Y. 2017) (remarking that "[t]he point is basic: A licensee's use of a license cannot give rise to a claim of copyright infringement, but a licensee's use of copyright rights *beyond* the scope of its license can.").

In contrast with cases finding nominal infringement claims to in fact be ownership claims, the controversy presented by Plaintiff's allegations, at least as it stands at this threshold stage, does not present a contested issue of

ownership.[8]  Preliminarily, the Court observes that the L&S Defendants and

SATV emphasize in their briefing that neither the 1999 Agreements nor the

Sony Agreements purported to license or otherwise assert an ownership

interest in the Vocal Arrangements.  (*See* L&S Br. 18 (arguing that the 1999

Agreements "read together as a single transaction ... placed squarely on BTN's

shoulders the obligation to obtain a license or authorization directly from

[P]laintiff"); SATV Br. 18-19 (arguing that SATV "did not ever represent that it

owns the Vocal Arrangements")).   *See Flo & Eddie, Inc.*, 80 F. Supp. 3d at 543

(stating that "[i]t makes no sense to say that Flo and Eddie's cause of action

against Sirius accrued when it became aware of its disputed ownership rights

against Sirius, because Sirius does not claim ownership of the copyrights and

there is no ownership dispute between Flo and Eddie and Sirius").  Moreover,

the SAC alleges that the L&S Defendants recognized Plaintiff's ownership

interest in the Vocal Arrangements in the 1999 R&H-L&S Agreement (SAC

¶ 40), and that neither the L&S Defendants nor SATV purported to claim an

---

[8]      Like BroadwayHD and Amazon (*see* BHD & Amazon Reply 5 n.3), the Court observes
that many of the cited cases addressing the ownership-infringement divide were decided
at the summary judgment stage.  *See, e.g., Kwan* v. *Schlein*, 634 F.3d 224, 226 (2d Cir.
2011); *Walker* v. *Carter*, 210 F. Supp. 3d 487, 490 (S.D.N.Y. 2016); *Flo & Eddie, Inc.* v.
*Sirius XM Radio Inc.*, 80 F. Supp. 3d 535, 537 (S.D.N.Y. 2015); *Ortiz* v. *Guitian Bros.
Music Inc.*, No. 07 Civ. 3897 (RWS), 2008 WL 4449314, at *1 (S.D.N.Y. Sept. 29, 2008);
*Big E. Ent., Inc.* v. *Zomba Enterp., Inc*, 453 F. Supp. 2d 788, 789 (S.D.N.Y. 2006), *aff'd*,
259 F. App'x 413 (2d Cir. 2008) (summary order).  This is not surprising, given the more
robust factual record presented in that procedural posture.  The Court notes in this
regard that as this case progresses, the evidence elicited in discovery may prompt a
different resolution of Plaintiff's claims.  *See Walker*, 210 F. Supp. 3d at 504 (rejecting
plaintiff's argument that "Defendants may not now challenge the classification of [his]
claim, as the Court previously denied Defendants' motion to dismiss" the claim and
remarking that "[t]he fact that the Court earlier denied the motion to dismiss the
infringement claim has no bearing on Defendants' argument at summary judgment
regarding the classification of the claim").

ownership interest in the Vocal Arrangements (*id.* at ¶¶ 47, 67).  *See Philogene* v. *Duckett*, No. 17 Civ. 7224 (WHP), 2018 WL 3946447, at *5 (S.D.N.Y. Aug. 16, 2018) (finding that plaintiff stated infringement, not ownership, claim where "the crux of this dispute" was not who owned the work, but rather whether defendants infringed on the work by publishing subsequent works that derived from and substantially copied the first work).  To be sure, Plaintiff asserts that he is the rightful owner of the copyright in the Vocal Arrangements.  (SAC ¶ 8). But such an assertion is a necessary element of his copyright claims and cannot, on its own, transform his infringement claims into ownership claims. Plaintiff's remaining allegations, by contrast, are focused on whether the Moving Defendants received valid licenses to use the Vocal Arrangements before licensing or streaming the Vocal Arrangements, and not whether those entities owned or purported to own the Vocal Arrangements.

The L&S Defendants argue in reply that "there *is* a controversy in this case concerning [P]laintiff's asserted copyright ownership in the Vocal Arrangements[.]"  (L&S Reply 3).  The controversy, according to the L&S Defendants, stems from the Vocal Arrangements' status as a derivative work "based on the pre-existing, independently copyrighted songs of Leiber and Stoller."  (*Id.* at 3-4).  The L&S Defendants argue that while L&S Broadway, the entity that entered into the Vocal Arranger Agreement with Plaintiff, may have recognized his ownership of the Vocal Arrangements, "Leiber and Stoller are the only parties that may grant permission to create derivative works."  (*Id.* at 4).  It is against this background that the L&S Defendants argue that

"[P]laintiff's own allegations make clear that the L&S Defendants and BTN treated [P]laintiff, in 1999, as if he possessed no such copyrights." (*Id.*).

While the L&S Defendants may pursue their ownership argument as this case proceeds, the Court cannot find that it dictates the dismissal of the SAC now. As the L&S Defendants recognize, the purported ownership controversy raised in their briefing "has not been fully addressed because of the early, pre-Answer stage of these proceedings." (L&S Br. 3). Implicit in this statement is an acknowledgement that, on a motion to dismiss, the Court is bound by the allegations set forth in the operative pleading and any materials that are incorporated by reference in or integral to it. *See Chambers*, 282 F.3d at 152-53. Indeed, the Second Circuit has observed that "[c]onsideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 154 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, based on its review of the materials properly before it at this stage — including the 1999 R&H-L&S Agreement that Plaintiff alleges demonstrates the L&S Defendants' recognition of his ownership rights in the Vocal Arrangements (SAC ¶ 40), and the 1999 Agreements that Plaintiff contends do not call into doubt those ownership rights (*id.* at ¶ 47) — the Court cannot find that Plaintiff has pleaded ownership claims.

While many of SATV's and BroadwayHD and Amazon's arguments mirror those made by the L&S Defendants, SATV places additional emphasis on the

Second Circuit's decision in *Wilson* v. *Dynatone Publ'g Co.*, 892 F.3d 112 (2d Cir. 2018), and the cases following it.  (SATV Br. 15-17).  In *Wilson*, the Second Circuit recognized "at least three types of events that can put a potential plaintiff on notice and thereby trigger the accrual of an ownership claim: public repudiation; private repudiation in communications between the parties; and implicit repudiation 'by conspicuously exploiting the copyright without paying royalties.'"  *Wilson*, 892 F.3d at 118 (quoting *Gary Friedrich Enterprises, LLC* v. *Marvel Characters, Inc.*, 716 F.3d 302, 317 (2d Cir. 2013)).  In SATV's view, the SAC alleges an implicit repudiation that occurred when Plaintiff learned "that third parties were using his Vocal Arrangements without his permission, without crediting him, and without compensating him[.]"  (SATV Br. 16-17).

SATV's reliance on *Wilson* is misplaced.  In *Wilson*, the plaintiffs sought "declaratory judgments that [i] they are the owners of the renewal copyrights in the musical composition 'Sho' Nuff (You Really Love Him),' and a recording of this song, which they authored and created in 1973; and [ii] the copyright on this composition and recording registered by defendants in 1974 is invalid." *Wilson* v. *Dynatone Publ'g Co.*, No. 16 Civ. 104 (PAE), 2017 WL 1330336, at *1 (S.D.N.Y. Apr. 10, 2017), *aff'd in part, vacated in part, remanded*, 892 F.3d at 112.  Thus, in that case, ownership undoubtedly formed "the backbone of the infringement claim at issue," *Kwan*, 634 F.3d at 229, and the question before that court was when that claim had accrued.  Here, by contrast, the claims set forth in the SAC do not present a question of ownership for the Court to resolve and thus the Court need not look back to determine when such ownership

26

claims first arose.  Indeed, as discussed above, Plaintiff alleges that he is the sole and exclusive owner of the copyright in the Vocal Arrangements, and SATV agrees with Plaintiff that it "did not ever represent that it owns the Vocal Arrangements."  (SATV Br. 18-19).  The Court therefore cannot find on the allegations now before it that Plaintiff has pleaded ownership claims.[9]

In sum, the Court finds that the core issues raised by the SAC are issues of infringement and that Plaintiff has therefore pleaded copyright infringement, rather than ownership, claims.  Because BroadwayHD and Amazon's motion to dismiss turns entirely on their argument that Plaintiff has pleaded an ownership claim as to them, the Court denies their motion in full.

## C.  The Court Sustains Plaintiff's Contributory Copyright Infringement Claim Asserted Against the L&S Defendants and SATV

The Court now turns to whether Plaintiff has plausibly alleged that either SATV or the L&S Defendants may be held liable for contributing to infringing activity that occurred within three years of when Plaintiff filed the original complaint in this case.  *See Sohm* v. *Scholastic Inc.*, 959 F.3d 39, 52 (2d Cir. 2020) (holding that "a plaintiff's recovery [in a copyright infringement action] is limited to damages incurred during the three years prior to filing suit").  As set

---

[9]     For similar reasons, the Court finds that BroadwayHD and Amazon's bullet-point list of "allegations of decades-old repudiation and admissions of contemporaneous knowledge of that repudiation" misses the point.  (*See* BHD & Amazon Br. 7-8).  While these allegations might bear on *when* an ownership claim would have accrued, they do not address *whether* Plaintiff has pleaded an ownership claim in the first instance.

forth below, the Court finds that Plaintiff has alleged a plausible claim against both defendants.[10]

### 1. Applicable Law

"[C]ontributory infringement is based upon 'the common-law doctrine that one who knowingly participates or furthers a tortious act is jointly and severally liable with the prime tortfeasor.'" *New London Assocs., LLC* v. *Kinetic Social LLC*, 384 F. Supp. 3d 392, 407 (S.D.N.Y. 2019) (quoting *Arista Records, LLC* v. *Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010)). "To state a claim for contributory infringement, a plaintiff must allege facts that a defendant 'with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.'" *Rams* v. *Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376, 383 (S.D.N.Y. 2016) (quoting *Gershwin Pub. Corp.* v. *Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).

"To qualify as material contribution, the defendant's support must be 'more than a mere quantitative contribution to the primary infringement ... [it] must be substantial.'" *Hartmann* v. *Amazon.com, Inc.*, No. 20 Civ. 4928 (PAE), 2021 WL 3683510, at *6 (S.D.N.Y. Aug. 19, 2021) (quoting *Arista Records LLC* v. *Usenet.com, Inc.*, 633 F. Supp. 2d 124, 155 (S.D.N.Y. 2009)). "Two types of

---

[10]   The L&S Defendants and Plaintiff dispute the appropriate application of the Copyright Act's statute of limitations to claims for contributory copyright infringement. (L&S Br. 15-17; Pl. Opp. 45-48). The core divide between the parties concerns whether the alleged contribution to the infringing activity itself must be within three years or if only the direct infringement must be. (*See id.*). The Court finds it unnecessary to address this dispute, because the SAC clearly alleges that Plaintiff's contributory copyright infringement claim rests on the L&S Defendants' role in SATV's licensing of the Vocal Arrangements to Broadway Worldwide. (SAC ¶ 106). As these events occurred in 2018 (*id.*), there is no question that they were timely raised in 2019 (*see* Dkt. #1).

activity lead to contributory liability: '(i) personal conduct that encourages or assists the infringement;' or '(ii) provision of machinery or goods that facilitate the infringement.'" *Rams*, 202 F. Supp. 3d at 384 (quoting *Faulkner* v. *Nat'l Geographic Soc'y*, 211 F. Supp. 2d 450, 473 (S.D.N.Y. 2002)). "[P]articipation sufficient to establish a claim of contributory infringement may not consist of merely providing the means to accomplish an infringing activity." *Hartmann*, 2021 WL 3683510, at *6. Rather, "participation in the infringement must be substantial and the authorization or assistance must bear a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer." *Lefkowitz* v. *John Wiley & Sons, Inc.*, No. 13 Civ. 6414 (KPF), 2014 WL 2619815, at *11 (S.D.N.Y. June 2, 2014) (quoting *Brought to Life Music, Inc.* v. *MCA Recs., Inc.*, No. 02 Civ. 1164 (RWS), 2003 WL 296561, at *2 (S.D.N.Y. Feb. 11, 2003)). "The resolution of [whether the alleged contribution was material] depends upon a determination of the function that the alleged infringer plays in the total reproduction process." *Arista Records*, 604 F.3d at 118 (internal alterations and quotation marks omitted).

### 2. Plaintiff Has Stated a Claim Against SATV

Plaintiff alleges that SATV committed contributory copyright infringement by providing the Sync License to Broadway Worldwide in 2018 without his authorization. (SAC ¶¶ 71, 106). According to Plaintiff, "in 2018, Broadway Worldwide (as successor to BTN) approached the L&S Defendants to revive the [1999 Agreements], which had expired by their terms in 2013, and on information and belief, the L&S Defendants advised Broadway Worldwide that

it needed to seek a license from [SATV] instead of from the L&S Defendants because [SATV] was the owner and administrator of the L&S Defendants' rights pursuant to the 2007 Sony Agreements." (*Id.* at ¶ 106). Plaintiff further alleges that SATV then granted the Sync License to Broadway Worldwide, which provided Broadway Worldwide with a license to exploit the Recording. (*Id.*). After receiving the Sync License from SATV, Broadway Worldwide granted a license to use the Recording to BroadwayHD for digital streaming (*id.* at ¶ 74), and BroadwayHD then "used the Recording to promote its service and all of its other titles, and streamed the Recording on the Internet, including over its own platform and through Defendant Amazon's services" (*id.* at ¶ 75). Plaintiff alleges that SATV should be held contributorily liable for BroadwayHD and Amazon's later infringement of the Vocal Arrangements on the theory that SATV "provided the tools and support for" that infringement. (*Id.* at ¶ 106).

In moving to dismiss Plaintiff's claim, SATV argues first that the claim is refuted by the terms of Sync License. (SATV Br. 18). According to SATV, the Sync License granted Broadway Worldwide "the right to use only the Leiber & Stoller musical compositions in synchronization with the Video, not the Vocal Arrangements." (*Id.* at 8). SATV asserts that the Sync License did so by "incorporat[ing] only the terms of the 1999 Publisher's Agreement for the right to use the musical compositions in synchronization with the Video, as well as additional terms relevant to the 2019 sync use, including that the Video could only be distributed on the BroadwayHD streaming platform, and that sub-licenses were prohibited." (*Id.*). Thus, on SATV's account, the Sync License

"establishes that [SATV] did not purport to be the owner of the Vocal Arrangements or license those works for use." (*Id.* at 19).

Contrary to SATV's assertions, the Sync License does not definitively foreclose Plaintiff's claim.  The Sync License cited in SATV's brief consists of a chain of emails exchanged between Defendant Bruce Brandwen and non-party Esther Friedman, an unidentified employee at SATV.  (*See generally* Sync License).  These emails primarily concern the fee that SATV would receive for the Sync License.  (*See id.*).  It is not until Friedman's email stating that "[a]s mentioned [she] need[ed] more clarity" on the terms of the license (*id.* at 2), that Brandwen responded that "attached is the original publisher's agreement with Leiber and Stoller Music, Trio, etc[.]" (*id.* at 1).  The next email included after that exchange is an email from Friedman to another SATV employee stating that "[t]his is an invoice only for the music in Smokey Joes Café[.]"  (*Id.* at 1). Taken together, these emails do not conclusively demonstrate that the Sync License "incorporated only the terms of the 1999 Publisher's Agreement," as SATV suggests (SATV Br. 19), rather than the whole of the 1999 Agreements, as Plaintiff alleges (SAC ¶¶ 69-71).  Indeed, while the emails are relatively detailed as to the fees that SATV and Brandwen would receive from the Sync License, they are comparatively silent as to the scope of rights that SATV would grant to Broadway Worldwide or BroadwayHD.  Thus, the Sync License is far less definitive than SATV purports it to be, and is insufficient to foreclose Plaintiff's claim as a matter of law.

SATV next contends that it cannot be held liable for Amazon's alleged infringement of the Vocal Arrangements because the Sync License prohibited BroadwayHD from sublicensing its rights.  (SATV Br. 20).  To be sure, in several of the emails included as part of the Sync License, Brandwen represents to Friedman that the license would extend only to BroadwayHD and that BroadwayHD "would NOT be permitted to sub license to Netflix, Amazon or Hulu or any other service."  (Sync License 8).  While these emails suggest that SATV may ultimately succeed in demonstrating that it did not contribute to Amazon's alleged downstream infringement, the Court cannot find that the Sync License itself forecloses Plaintiff's claim.  Plaintiff alleges that SATV "received benefits from [the Sync License] as a result of the infringement by BroadwayHD and/or Amazon."  (SAC ¶ 106).  This raises the possibility that SATV was aware of Amazon's infringement, but chose to benefit from it rather than stop it.  Discovery, of course, may undercut this theory and demonstrate that SATV did not permit the sublicensing and was not aware of it, but the Sync License itself does not render the theory implausible as a matter of law.

Lastly, SATV asserts that Plaintiff has failed to allege that SATV materially contributed to BroadwayHD and Amazon's alleged infringement. (SATV Br. 20-21).  SATV bases this argument on its observation that Plaintiff "repeatedly alleges that BWI and BroadwayHD were both 'fully aware of Roberts' status as copyright owner of the Vocal Arrangements,' and accordingly knew that [SATV] could not grant a license for the streaming use of the Vocal Arrangements."  (*Id.* at 20 (citing SAC ¶¶ 37, 54, 77, 80, 94)).  From this

observation, SATV reasons that it could not have materially contributed to Broadway Worldwide's or BroadwayHD's alleged infringement, because "the direct infringers necessarily knew that they needed to obtain a direct license from Roberts for the use of the Vocal Arrangements." (*Id.* at 21).

While the Court finds it to be a close call, it ultimately finds that Plaintiff's allegations clear the plausibility threshold. Plaintiff's core claim is that SATV is contributorily liable for the alleged downstream infringement that followed its grant of the Sync License to Broadway Worldwide. As Plaintiff notes in his briefing, the Second Circuit has found that such allegations may state a plausible claim for contributory liability. (Pl. Opp. 35). *See Davis* v. *Blige*, 505 F.3d 90, 105 n.13 (2d Cir. 2007) (observing that "the unauthorized licensor may be liable for infringement committed by his unauthorized licencees under a theory of contributory infringement as 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another'" (quoting *Gershwin Publ'g Corp.* v. *Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971))). Undoubtedly, Plaintiff's allegations that the sublicensees understood the Sync License not to validly convey a license to the Vocal Arrangements raise a unique factual distinction not addressed in *Davis*. Nonetheless, the Court is bound to construe Plaintiff's allegations in the light most favorable to him, and the allegations set forth in the SAC may plausibly be read to suggest that, despite their alleged knowledge of Plaintiff's ownership interest in the Vocal Arrangements, Broadway Worldwide and the other alleged infringers found

33

value in and benefited from SATV's grant of the Sync License.  At this stage, these allegations are sufficient to overcome SATV's challenge.

To conclude, after construing all reasonable inferences in Plaintiff's favor, the Court finds that he has stated a plausible claim for contributory copyright infringement against SATV.  The Court recognizes that SATV has identified several substantial weaknesses in Plaintiff's claim, and it doubts Plaintiff's ability to maintain such a claim on a fuller evidentiary record.  That said, the Court finds that the SAC has threaded the needle and plausibly stated the claim and thus denies SATV's motion to dismiss it.

### 3.    Plaintiff Has Stated a Claim Against the L&S Defendants

Plaintiff's contributory copyright infringement claim against the L&S Defendants flows from their alleged role in SATV's grant of the Sync License to Broadway Worldwide.  (SAC ¶ 106).  Plaintiff alleges that the L&S Defendants materially contributed to the Sync License and the resulting downstream infringement of the Vocal Arrangements in two ways.  *First*, Plaintiff alleges that in response to Broadway Worldwide's request to revive the 1999 Agreements, the L&S Defendants referred Broadway Worldwide to SATV.  (*Id.*). *Second*, Plaintiff alleges that following their referral of Broadway Worldwide to SATV, the L&S Defendants signed off on and received financial benefits from the parties' resulting Sync License.  (*Id.*).  Plaintiff sources this latter allegation to the Sony Agreements, which he contends provided that "the L&S Defendants have a right to control the approval of licenses for the exploitation of the Musical and to receive royalties from [SATV] for the exploitation of the

34

Musical." (*Id.* at ¶ 72). The Court finds only the second of these allegations to state a plausible claim of contributory copyright infringement.

To begin, the Court finds that Plaintiff's allegation that the L&S Defendants referred Broadway Worldwide to SATV fails to state a contributory copyright infringement claim. Plaintiff contends that by referring Broadway Worldwide to SATV, the L&S Defendants necessarily "represented ... that Sony was the rights holder [in the Recording], causing the downstream infringement by the Brandwen Defendants and co-defendants Sony, BroadwayHD, and Amazon." (Pl. Opp. 43). But the facts alleged in the SAC cannot bear the weight of this argument. In the SAC, Plaintiff alleges that the L&S Defendants responded to Broadway Worldwide's inquiries by directing them to SATV "because Sony/ATV was the owner and administrator of the L&S Defendants' rights pursuant to the 2007 Sony Agreements." (SAC ¶ 106). That the L&S Defendants would make this referral comes as no surprise, in light of Plaintiff's allegation that the L&S Defendants sold certain of their rights to SATV in 2007. (*Id.* at ¶ 61). Even assuming that Broadway Worldwide and SATV then negotiated an improper license of the Vocal Arrangements, the L&S Defendants' minimal role in introducing the parties to that transaction to one another is insufficiently material to constitute contributory copyright infringement. *See Hartmann*, 2021 WL 3683510, at *6 (stating that "merely providing the means to accomplish an infringing activity" is insufficient to state a claim).

By contrast, the Court finds that Plaintiff's allegations concerning the L&S Defendants' involvement in approving and benefiting from SATV's

licensing of the Recording to Broadway Worldwide states a plausible contributory copyright infringement claim. Crucially, Plaintiff alleges that, pursuant to the 2007 Sony Administration Rights Agreement, SATV could not have entered into this agreement with Broadway Worldwide without the L&S Defendants' express authorization. (SAC ¶ 106; *see also* Sony Administration Rights Agreement, § 2.02.1(b) (providing that SATV will not "license synchronization rights for any of the Compositions in any theatrical motion picture, television show or any other audio visual work" without the L&S Defendants' consent)). These allegations place the L&S Defendants squarely at the center of the transaction that led to the infringing uses of the Vocal Arrangements, and therefore sufficiently allege that the L&S Defendants materially contributed to the infringement of the Vocal Arrangements. *See Davis*, 505 F.3d at 105 n.13; *see also Rams*, 202 F. Supp. 3d at 384 (finding defendant's alleged promotion and distribution of allegedly infringing album cover to plausibly constitute material contribution); *Energy Intel. Grp., Inc.* v. *Jefferies, LLC*, 101 F. Supp. 3d 332, 341 (S.D.N.Y. 2015) (concluding that defendant's act of providing username and password enabled others' infringement and constituted material contribution); *BWP Media USA Inc.* v. *Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 357 (S.D.N.Y. 2014) (finding that defendants' alleged acts of "encouraging" infringement and providing "detailed instructions" on how to engage in infringement plausibly amounted to material contribution).

The L&S Defendants advance two arguments in opposition. *First*, the L&S Defendants argue that Plaintiff's allegation that they approved SATV's licensing of the Recording is too conclusory to state a claim. (SATV Br. 16). This argument is unpersuasive. Plaintiff's allegation is sourced to more than his mere belief that the L&S Defendants approved the Sync License. The allegation is instead based in large measure on the Sony Administration Rights Agreement's provision that SATV would not "license synchronization rights for any of the Compositions in any theatrical motion picture, television show or any other audiovisual work" without the L&S Defendants' permission. (Sony Administration Rights Agreement, § 2.02.1(b)). While discovery may show that the L&S Defendants did not in fact approve or otherwise involve themselves in SATV's issuance of the Sync License, Plaintiff's allegations are sufficiently concrete to state a claim at this juncture.

*Second*, the L&S Defendants argue that Plaintiff's claim is foreclosed by the 1999 Agreements themselves. In their view, the 1999 Agreements, "properly read together as a single transaction, entirely contradict [P]laintiff's assertion that the L&S Defendants 'implicitly' licensed [P]laintiff's Vocal Arrangements to BTN." (L&S Br. 18). The L&S Defendants thus maintain that "when Broadway Worldwide … purportedly sought to" revive the 1999 Agreements, "it was seeking to revive Agreements that, by their plain language, required Broadway Worldwide to obtain separate rights in the Vocal Arrangements directly from [P]laintiff." (*Id.* at 21). On this account, the L&S Defendants cannot be liable for any subsequent copyright infringement

37

because they explicitly directed BTN, and later Broadway Worldwide, "to obtain a license or authority to use the Vocal Arrangements directly from [P]laintiff in connection with the 'revived' [1999 Agreements]."  (*Id.*).

The L&S Defendants' argument hinges on the provisions of the 1999 Agreements that directed BTN to secure additional authorizations before making or distributing the Recording.  As stated earlier, the 1999 Producer's Agreement, entered into by BTN and non-party L&S Broadway, provided that "BTN shall, with respect to the Musical, obtain[,] honor or enter into agreements for securing all necessary rights and consents in connection with the Program from," among others, "Chapman Roberts[.]"  (1999 Producer's Agreement, § 4(a)).  Significantly, however, neither the 1999 Author's Agreement (between Leiber and Stoller, as individuals, and BTN) nor the 1999 Publisher Agreement (between Leiber and Stoller Music and related business entities and BTN) explicitly directed BTN to secure authorization or consent from Plaintiff before exploiting the Recording.  The 1999 Author's Agreement instead provided that "BTN hereby acknowledges that Author is not hereby granting to BTN certain rights in the Musical necessary for the exploitation of the program … includ[ing], without limitation, certain rights owned by other creative personnel involved with the production of the Musical, including, without limitation" certain individuals other than Plaintiff.  (1999 Author's Agreement, § 1(b)).

Lest there be doubt on this point, the Court shares the L&S Defendants' skepticism that the 1999 Agreements purported to license the Vocal

Arrangements, but it is constrained at this stage to find the Agreements to be insufficiently clear to foreclose Plaintiff's claim as a matter of law. The L&S Defendants' strongest point is that the 1999 Producer's Agreement provided that BTN would secure Plaintiff's permission before making the Recording. Contrary to the L&S Defendants' argument, however, there is nothing in the 1999 Agreements that would permit the Court to import that language from the Producer's Agreement into the Publisher or Author's Agreements. Indeed, each of the 1999 Agreements was executed by a different group of parties, and each Agreement contains a merger clause. (*See* 1999 Producer's Agreement, § 15; 1999 Publisher Agreement, § 15; 1999 Author's Agreement, § 15). Moreover, while the plain text of the 1999 Producer's Agreement obligated BTN to secure Plaintiff's permission before making or distributing the Recording (*see* 1999 Producer's Agreement, § 4(b)), the SAC suggests that the L&S Defendants purported to provide those rights via the 1999 Author's Agreement. (*See* SAC ¶ 43). Given the limited evidentiary record now before it, together with its mandate to construe all reasonable inferences in Plaintiff's favor, the Court finds that these allegations are sufficient to state a claim.

In sum, the Court finds that Plaintiff has plausibly alleged that the L&S Defendants materially contributed to the downstream infringement of the Vocal Arrangements. The Court therefore denies the L&S Defendants' motion to dismiss Plaintiff's contributory copyright infringement claim against them.

**D.    The Court Dismisses Plaintiff's Unjust Enrichment Claim Against the L&S Defendants and SATV**

SATV and the L&S Defendants also move to dismiss Plaintiff's claim for unjust enrichment, arguing that the claim is preempted by Section 301(a) of the Copyright Act.  (SATV Br. 21-24; L&S Br. 22-23).[11]  In opposition, Plaintiff argues that his unjust enrichment claim goes beyond his contributory copyright infringement claim and may be maintained in the alternative to his primary infringement claim.  (Pl. Opp. 48-50).  As in *Roberts I*, the Court finds Plaintiff's claim to be preempted by the Copyright Act.

"The Copyright Act preempts claims when: [i] the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act, and [ii] the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law."  *Transcience Corp.* v. *Big Time Toys, LLC*, 50 F. Supp. 3d 441, 453 (S.D.N.Y. 2014); *accord Universal Instruments Corp.* v. *Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 48 (2d Cir. 2019).  Under this standard, "[i]n order for a state cause of action to survive preemption, it must have an extra element beyond reproduction, preparation of derivative works, distribution, performance or display, which changes the nature of the action so that it is qualitatively different from a copyright infringement claim."  *Transcience Corp.*, 50 F. Supp.

---

[11]    The L&S Defendants further argue that Plaintiff's unjust enrichment claim is duplicative of his contributory copyright infringement claim (L&S Br. 23), and both the L&S Defendants and SATV argue that his claim is implausible (*id.* at 24; SATV Br. 24-25).  Given its finding that Plaintiff's unjust enrichment claim is preempted, the Court need not reach these alternative arguments.

3d at 453 (emphasis omitted) (internal quotation marks omitted) (quoting *Gusler* v. *Fischer*, 580 F. Supp. 2d 309, 316 (S.D.N.Y. 2008)).  "Preemption, therefore, turns on 'what [the] plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced.'" *Universal Instruments Corp.*, 924 F.3d at 48 (quoting *Computer Assocs. Int'l, Inc.* v. *Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992)).

Here, as before, Plaintiff's unjust enrichment claim seeks to protect his right to control the copying, distribution, and public performance of his Vocal Arrangements.  Plaintiff alleges in support of his claim that the L&S Defendants and SATV "misrepresented to third parties that they possessed rights in the Vocal Arrangements by marketing, distributing, and selling licenses which included the Vocal Arrangements without Roberts' permission and by failing to account for the obligation to pay Roberts for use of his Vocal Arrangements[.]"  (SAC ¶ 139).  As a consequence of these alleged misrepresentations, Plaintiff alleges, the L&S Defendants and SATV have "received tangible and intangible benefits, including, but not limited to, monies, license fees, royalties, and distribution rights[.]"  (*Id.* at ¶ 140).

Plaintiff suggests in his opposition brief that his unjust enrichment claim "specifically pleads the additional element of misrepresentation," and argues that this element "is not necessary for Mr. Roberts to be successful in his claims of direct and contributory copyright infringement, but is a crucial factor in determining whether the defendants were unjustly enriched[.]"  (Pl. Opp. 49). The Court considered and rejected this same argument in *Roberts I,* finding

that "even if proving misrepresentation were not necessary for his copyright infringement claim, this element does not 'go[ ] far enough to make the unjust enrichment claim qualitatively different from a copyright infringement claim.'" *Roberts I*, 518 F. Supp. 3d at 735 (quoting *Briarpatch Ltd.* v. *Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)); *see also Atrium Grp. de Ediciones y Publicaciones, S.L.* v. *Harry N. Abrams, Inc.*, 565 F. Supp. 2d 505, 510 (S.D.N.Y. 2008) ("[D]eception is not the sort of element that would cause claims for unjust enrichment or misappropriation to be qualitatively different from the Federal Copyright Act." (internal quotation marks omitted)).

Plaintiff also argues that his unjust enrichment claim should be permitted to proceed in the alternative to his contributory copyright infringement claim.  (Pl. Opp. 49-50).  In Plaintiff's view, "[e]ither Mr. Roberts has an enforceable copyright, or he created the Vocal Arrangements and has performed unpaid labor at the behest of the Defendants on the basis that the Vocal Arrangements continue to be exploited without compensation to Mr. Roberts."  (*Id.* at 50 n.17).  Plaintiff purports to find support for his position in *Young-Wolff* v. *McGraw-Hill Sch. Educ. Holdings, LLC*, No. 13 Civ. 4372 (KMW), 2015 WL 1399702 (S.D.N.Y. Mar. 27, 2015), in which a sister court in this District observed that "[a]n unjust enrichment claim is not preempted if it seeks relief based on the defendant's use of a non-copyrighted work or *authorized use of a copyrighted work*, neither of which involves the violation of a copyright."  (Pl. Opp. 50 (emphasis in original) (quoting *Young-Wolff*, 2015 WL 1399702, at *5)).

Far from supporting Plaintiff's unjust enrichment claim, *Young-Wolff* identifies the precise reason for its preemption.  In *Young-Wolff*, the court found the plaintiff's unjust enrichment claim to be preempted because it "restate[d] the premise for his copyright infringement claim and then propose[d] the doctrine of unjust enrichment as an alternative vehicle for recovering royalties owed."  *Young-Wolff*, 2015 WL 1399702, at *5.  So too here.  Plaintiff has not pleaded that the Vocal Arrangements were not copyrighted or that the L&S Defendants' or SATV's actions were licensed.  To the contrary, Plaintiff maintains as part of his unjust enrichment claim that the Vocal Arranger Agreement entitled him to "the exclusive right to authorize licenses to the Vocal Arrangements in audio-visual works such as the Recording" (SAC ¶ 132), and that the L&S Defendants and SATV each "had a duty to obtain Roberts' permission and compensate Roberts for audio-visual uses of his Vocal Arrangements" (*id.* at ¶ 133).  He goes on to argue that "[t]o the extent that this Court or a jury finds" that the L&S Defendants' or SATV's alleged licensing of the Vocal Arrangements was permissible, "the defendants are liable for unjustly enriching themselves at Roberts' expense by failing to compensate him for his labor."  (*Id.* at ¶ 144).  These allegations demonstrate that Plaintiff is seeking to use his unjust enrichment claim to recoup any damages that may not be recoverable under the Copyright Act.  As in *Young-Wolff*, "[t]hat type of claim is impermissible."  2015 WL 1399702, at *5 (citing *Briarpatch*, 373 F.3d at 305).  Accordingly, the Court dismisses Plaintiff's unjust enrichment claim with prejudice.

## CONCLUSION

For the foregoing reasons, the Court DENIES IN FULL BroadwayHD and Amazon's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Additionally, the Court GRANTS IN PART and DENIES IN PART the L&S Defendants' and SATV's motions to dismiss under Rule 12(b)(6).  The Court GRANTS both defendants' motions to dismiss Plaintiff's claim for unjust enrichment.  By contrast, the Court DENIES the defendants' motions to dismiss Plaintiff's claim for contributory copyright infringement.

BroadwayHD, Amazon, the L&S Defendants, and SATV are hereby ORDERED to file their answers to the Second Amended Complaint on or before **May 2, 2022**.  Additionally, the parties are ORDERED to file proposed Case Management Plans and a joint status letter stating the status of discovery and their views as to the appropriate next steps in this case on before **May 9, 2022**.

The Clerk of Court is directed to terminate the motions at docket entries 135, 137, and 139.

SO ORDERED.

Dated:       March 31, 2022
             New York, New York

_____
      KATHERINE POLK FAILLA
      United States District Judge